## In re H-N-, Respondent

*Decided October 13, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

The Immigration Judge and the Board of Immigration Appeals have jurisdiction to adjudicate an alien's request for a waiver of inadmissibility pursuant to section 209(c) of the Immigration and Nationality Act, 8 U.S.C. § 1159(c) (1994 & Supp. II 1996), following the initial denial of such a waiver by the Immigration and Naturalization Service.

Earl D. Raynor, Jr., Esquire, Philadelphia, Pennsylvania, for respondent

Theodore J. Murphy, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: SCHMIDT, Chairman; DUNNE, Vice Chairman; VACCA, HOLMES, HURWITZ, ROSENBERG, GUENDELSBERGER, GRANT, MOSCATO, and MILLER, Board Members. Concurring Opinion: VILLAGELIU, Board Member. Concurring and Dissenting Opinion: FILPPU, Board Member, joined by SCIALABBA, Vice Chairman; MATHON and JONES, Board Members. Dissenting Opinion: COLE, Board Member, joined by HEILMAN, Board Member.

VACCA, Board Member:

In an oral decision dated October 29, 1998, an Immigration Judge found the respondent removable as charged but granted her application for adjustment of status and request for a waiver of inadmissibility pursuant to sections 209(a) and (c) of the Immigration and Nationality Act, 8 U.S.C. §§ 1159(a) and (c) (1994 & Supp. II 1996). The Immigration and Naturalization Service has appealed this decision. The appeal will be dismissed.

## I. INTRODUCTION

The respondent is a 37-year-old native and citizen of Cambodia who arrived in the United States in 1984 as a refugee. In 1996, she was convicted in California of second-degree robbery and was sentenced to 3 to 6 years

in prison. Subsequent to her incarceration, she was notified by the Service of the revocation of her parole status and was taken into custody pending a determination of her eligibility for adjustment of status under section 209 of the Act. Because of her conviction, the respondent applied for a waiver of inadmissibility under section 209(c) of the Act. Her application was denied, and the respondent was placed in removal proceedings by the Service. The respondent was charged with inadmissibility pursuant to section 212(a)(2)(A)(i)(I) of the Act, 8 U.S.C. § 1182(a)(2)(A)(i)(I) (1994 & Supp. II 1996), as an alien convicted of a crime involving moral turpitude. As stated above, the Immigration Judge found the respondent eligible for a waiver of inadmissibility, as well as for adjustment of status, and he granted her this relief from removal.

## II. ISSUE

On appeal, the Service argues that the Immigration Judge lacked jurisdiction to adjudicate the respondent's request for a waiver of inadmissibility. According to the Service, the authority to adjudicate an application for a waiver and for adjustment of status is specifically delineated in section 209 of the Act and 8 C.F.R. § 209.1 (1998), and this jurisdiction belongs to the Service. Having conducted our own analysis of all pertinent statutory and regulatory provisions, we disagree.

## III. ANALYSIS

### A. Section 209(c) of the Act

Pursuant to section 209 of the Act, an alien admitted into the United States as a refugee under section 207 of the Act, 8 U.S.C. § 1157 (1994 & Supp. II 1996), may have his or her status adjusted to that of a lawful permanent resident. In making such a determination, it is clear from the statute that the Attorney General has the power to grant a waiver of inadmissibility to an alien who may be inadmissible.[1]

The issue in this case is whether the Immigration Judges and this Board have been delegated jurisdiction over such waivers by the Attorney General.

---

[1]Section 209(c) of the Act states, in pertinent part:

[T]he Attorney General may waive any other provision of . . . section [212(a)] (other than paragraph (2)(C) or subparagraph (A), (B), (C), or (E) of paragraph (3)) with respect to such an alien for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest.

As the statute is silent in this regard, we must turn to the regulations interpreting section 209(c) of the Act. In so doing, we look to general rules of statutory construction to interpret and analyze the pertinent regulations. *See Diaz v. INS,* 648 F. Supp. 638, 644 (E.D. Cal. 1986) (stating that assuming that the regulations are consistent with the statute they are meant to interpret, it is proper to interpret the regulations "by application of the standard canons of statutory construction"); *see also United States v. Christensen*, 419 F.2d 1401, 1403 (9th Cir. 1969) (assuming that the regulations are consistent with the statute, a court is to construe an administrative regulation to effectuate the central purpose of the enacting body).

## B. Rules of Statutory and Regulatory Construction

As stated by the United States Supreme Court, there is "no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *Perry v. Commerce Loan Co.,* 383 U.S. 392, 400, *reh'g denied*, 384 U.S. 934 (1966). If the statutory language is clear, that is the end of the inquiry, as Immigration Judges and this Board, as well as the courts, "must give effect to the unambiguously expressed intent of Congress." *Matter of W-F-,* 21 I&N Dec. 3288, at 506 (BIA 1996) (citing *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984)); *see also Gonzalez v. McNary*, 980 F.2d 1418, 1420 (11th Cir. 1993). The same is true of regulations. *Diaz v. INS, supra*, at 644 (citing *Malat v. Riddell*, 383 U.S. 569, 571 (1966)). It is assumed that the legislative purpose is expressed by the ordinary or plain meaning of the words used. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *Matter of Fesale,* 21 I&N Dec. 114 (BIA 1995); *see also Malat v. Riddell, supra,* at 571.

In addition, a statute or regulation should be construed so that effect is given to all its provisions and no part of it will be inoperative, superfluous, void, or insignificant. *See* 2A Norman J. Singer, *Sutherland Statutory Construction* § 46.06 at 104 (4th ed. 1984); *see also Matter of Grinberg*, 20 I&N Dec. 911 (BIA 1994). It is a court's duty "'to give effect, if possible, to every clause and word of a statute.'" *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (quoting *Inhabitants of Montclair Township v. Ramsdell*, 107 U.S. 147 (1883)). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365, 371 (1988); *see also Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987); *Diaz v. INS, supra*, at 644 (citing *United Telecommunications, Inc. v. Commissioner*, 589 F.2d 1383, 1390 (10th Cir. 1978) (stating that when analyzing regulations, "if possible[,] all ambiguities are to be resolved in favor of an interpretation consis-

1041

tent with the statutory and regulatory scheme")). Keeping these construction rules in mind, we turn now to the regulation at issue.

## C. 8 C.F.R. § 209.1

As correctly stated by the Service, 8 C.F.R. § 209.1 is the sole regulation applicable to *refugees* attempting to adjust status. That section mandates that every alien granted refugee status must appear before an immigration officer 1 year after entry to determine his or her admissibility and, therefore, eligibility to adjust status.

> If the applicant is determined to be inadmissible, he/she shall be informed that he/she may renew the request for admission to the United States as an immigrant in exclusion proceedings under section 236 of the Act. The provisions of this section shall provide the sole and exclusive procedure for adjustment of status by a refugee admitted under section 207 of the Act, whose application is based on his/her refugee status.

8 C.F.R. § 209.1(a)(1).[2]

The Service argues that the last sentence of the above passage applies only to refugee aliens seeking admission into the United States. Those refugees already present here are not afforded a waiver option under this regulation. However, they may be granted a waiver by the Service under 8 C.F.R. § 207.3 (1999). According to the Service, that regulation specifically states that there is no appeal from a decision denying a waiver of inadmissibility, and therefore the Immigration Judge erred in adjudicating, and granting, the waiver application during the hearing.

In contrast to the Service's view of the statute and regulations, we find that the waiver in section 207 of the Act is completely separate from the waiver in section 209. The former applies to applications for refugee status, whereas the latter applies to subsequent applications for lawful permanent residence. Although the two sections are related, in that an alien first applies for admission as a refugee under section 207 and then applies for adjustment of status under section 209, we decline to view the very specific rules regarding waivers in section 207 as necessarily binding on the waiver delineated in section 209. There is simply no basis for so doing.

The Service also argues that, unlike 8 C.F.R. § 209.2, which applies to

---

[2]We note that although 8 C.F.R. § 209.1 has been updated in the 1999 regulations to reflect the change from exclusion and deportation proceedings to one "removal" proceeding, and it is written in a somewhat different format, the requirements and rules therein have not been altered. *See* 8 C.F.R. § 209.1 (1999). *See generally* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546.

asylees seeking adjustment of status,[3] 8 C.F.R. § 209.1 (applying to refugees) is silent as to the waiver application procedure. The Service points out, however, that we have held that "[c]onsideration of such waivers, in the first instance, is appropriately part of the examination of the alien under oath by an immigration officer provided for in 8 C.F.R. § 209.2(a)(1) (1986)." *Matter of Garcia-Alzugaray*, 19 I&N Dec. 407, 410 n.2 (BIA 1986). The Service interprets this to mean that only it has jurisdiction to grant a waiver under section 209; the Immigration Judge does not have such authority.

We first note that *Matter of Garcia-Alzugaray, supra*, involved an alien whose conditional refugee status had not yet been examined by the Service to determine his admissibility. We found in that case that such a determination is required prior to placing an alien in proceedings. In fact, it is fairly clear that this is what we meant when remanding *Garcia-Alzugaray* for this initial determination (i.e., in the first instance). However, no reference was made to an Immigration Judge's authority to adjudicate a section 209(c) waiver after an alien has been placed into proceedings.

Moreover, based on general rules of statutory construction, we find no basis for adopting the Service's position. First, the statute is not specific in stating that only the Service may adjudicate waivers under section 209. It simply states that "the Attorney General" has such authority. This suggests that either the Service or the Immigration Judges, or both, could exercise jurisdiction over such waivers.

Second, the regulations are neither specific nor restrictive as to who may exercise jurisdiction over waiver requests. They state that an "immigration officer" shall make the determination regarding whether an alien is admissible. 8 C.F.R. § 209.1(a)(1) (1998). No direct statement is made regarding the waiver of inadmissibility.

Even assuming that these terms may appear to refer exclusively to Service officers and not other officers under the Attorney General (i.e., the Immigration Judges), such an interpretation would conflict with other pertinent statutory and regulatory provisions. The fact that Immigration Judges have jurisdiction to determine the admissibility of aliens in exclusion, deportation, and now removal proceedings necessarily implies that they also have authority to determine if any relief is available to those aliens determined to be inadmissible. Thus, the subsection in the statute providing a waiver follows the subsection regarding admissibility. *See* sections

---

[3]The regulation applying to asylees specifically refers to the Service's jurisdiction to grant waivers of inadmissibility. In pertinent part, the regulation states that "[a]n applicant who is inadmissible to the United States under section 212(a) of the Act, may, under section 209(c) of the Act, have the grounds of inadmissibility waived by the director . . . ." 8 C.F.R. § 209.2(b) (1999).

209(a)(2), (c) of the Act. Furthermore, we note in this regard that the regulations provide that an alien who is found inadmissible must be informed of the right to renew a request for admission, and presumably for adjustment of status and all other relevant relief, in exclusion, or more recently, removal proceedings. *See* 8 C.F.R. § 209.1(a)(1); 8 C.F.R. § 209.1(e) (1999).

We note further that the regulations clearly grant Immigration Judges authority to adjudicate a waiver of inadmissibility "[i]n conjunction with *any* application for creation of status of an alien lawfully admitted for permanent residence made to an immigration judge." 8 C.F.R. § 240.11(a)(2) (1999) (emphasis added).[4] Reading the regulations and the statute together, we find that the Immigration Judges and this Board have jurisdiction to adjudicate a refugee's request for a waiver under section 209(c) of the Act following the initial denial of such a waiver by the Service.

## IV. CONCLUSION

In sum, we do not agree with the Service's interpretation of section 209 of the Act within the context of the statute at large. Indeed, that interpretation would perpetually bar any de novo administrative review of a waiver for which a refugee has the right to apply. We are unconvinced that in enacting section 209 of the Act, Congress would have intended such a result, particularly where there is a possibility of harm to the alien upon return to his or her native country. *See United States v. Menasche, supra*, at 538 ("'The cardinal principle of statutory construction is to save and not to destroy.'" (quoting *National Labor Relations Board v. Jones & Laughlin Steel Corp.,* 310 U.S. 1, 30 (1937))). Rather, we find that the regulations at 8 C.F.R. § 209.1 enunciate a comprehensive procedure, consistent with congressional intent regarding general adjustment of status practices, whereby we share jurisdiction with the Service. Accordingly, we conclude that the Immigration Judge properly exercised jurisdiction over the respondent's waiver application following the Service's initial denial of her request.

---

[4]The remainder of this regulation provides:

> [I]f the alien is inadmissible under any provision of section 212(a) of the Act, and believes that he or she meets the eligibility requirements for a waiver of the ground of inadmissibility, he or she may apply to the immigration judge for such waiver. The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing.

8 C.F.R. § 240.11(a)(2). We follow this regulation and find that the Immigration Judge properly informed the respondent of her right to apply for a waiver of inadmissibility under section 209(c) of the Act.

Finally, we have reviewed the Immigration Judge's decision granting the respondent a waiver under section 209(c) of the Act, and we find that he adequately and correctly stated the facts involved. Although the respondent was convicted of a serious crime involving robbery, she also has strong equities in her favor. These include four United States citizen children, a husband who legally resides here, and over 15 years of residence in the United States. In addition, we note that numerous favorable letters from family and friends were submitted into evidence, including a letter from the respondent's case worker in prison. These letters, as well as other evidence of record, indicate that the respondent's conviction is not indicative of her overall character and that she is a person who would be an asset to our society. Without reiterating the favorable factors in full, which were discussed extensively in the Immigration Judge's decision, we find no abuse of discretion such that we need to address the issues raised by the Service.[5] We agree with the Immigration Judge's decision that the respondent merits a waiver for reasons relating to humanitarian purposes, family unity, and the public interest. Accordingly, the Service's appeal will be dismissed.

**ORDER:** The appeal of the Immigration and Naturalization Service is dismissed.

*CONCURRING OPINION:* Gustavo D. Villageliu, Board Member

I respectfully concur.

I concur fully in the majority's conclusions. I write separately to specifically address the dissenting opinion's contention that under the regulations an Immigration Judge lacks authority to grant a waiver of inadmissibility pursuant to section 209(c) of the Immigration and Nationality Act, 8 U.S.C. § 1159(c) (1994 & Supp. II 1996), to an applicant for adjustment of status under section 209 of the Act in removal proceedings. As the majority noted in its thorough and careful analysis, 8 C.F.R. § 240.11(a)(2) (1999) specifically states:

> In conjunction with *any application for creation of status of an alien lawfully admitted for permanent residence* made to an immigration judge, if the alien is inadmissible under any provision of section 212(a) of the Act, and believes that he or she meets

---

[5]We do note that the Service argues in its brief that the respondent's offense is considered a particularly serious crime such that she is ineligible for relief. Although the Service is correct that the respondent is ineligible for asylum and withholding of removal, the fact that she has committed a particularly serious crime is not fatal to her application for a waiver of inadmissibility. Rather, the waiver is discretionary in nature and is determined by a separate and distinct standard from that applied in adjudications of applications for asylum and withholding of removal. The respondent is clearly not statutorily ineligible for a waiver of inadmissibility.

the eligibility requirements for a waiver of the ground of inadmissibility, *he or she may apply to the immigration judge for such waiver.* The immigration judge shall inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing.

*Id.* (emphasis added).

*CONCURRING AND DISSENTING OPINION:* Lauri Steven Filppu, Board Member, in which Lori L. Scialabba, Vice Chairman; Lauren R. Mathon and Philemina M. Jones, Board Members, joined

I concur in the majority's decision finding that Immigration Judges and this Board have jurisdiction over an alien's application for a waiver of inadmissibility pursuant to section 209(c) of the Immigration and Nationality Act, 8 U.S.C. § 1159(c) (1994 & Supp. II 1996), when the application arises as part of the renewal of a request for permanent residence under section 209(a).  I write separately because I am persuaded of this result by a slightly different analysis. In addition, I dissent from the majority's ultimate grant of relief under section 209(c) as a matter of discretion.

## I. JURISDICTION

### A. Statutory Provisions

Section 209 of the Act states, in pertinent part:

(a) CRITERIA AND PROCEDURES APPLICABLE FOR ADMISSION AS IMMIGRANT; EFFECT OF ADJUSTMENT.—(1) Any alien who has been admitted to the United States under section 207—

   (A) whose admission has not been terminated by the Attorney General pursuant to such regulations as the Attorney General may prescribe,

   (B) who has been physically present in the United States for at least one year, and

   (C) who has not acquired permanent resident status, shall, at the end of such year period, return or be returned to the custody of the Service for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 235, 240, and 241 [1225, 1229a, and 1231].

   (2) Any alien who is found upon inspection and examination by an immigration officer pursuant to paragraph (1) or after a hearing before *an immigration judge* to be admissible *(except as otherwise provided under subsection (c))* as an immigrant under this Act at the time of the alien's inspection and examination shall, notwithstanding any numerical limitation specified in this Act, be regarded as lawfully admitted to the

United States for permanent residence as of the date of such alien's arrival into the United States.

. . . .

(c) APPLICABILITY OF OTHER FEDERAL STATUTORY REQUIRE-MENTS.—The provisions of paragraphs (4), (5), and (7)(A) of section 212(a) shall not be applicable to any alien seeking adjustment of status under this section, and the Attorney General may waive any other provision of such section (other than paragraph (2)(C) or subparagraph (A), (B), (C), or (E) of paragraph (3)) with respect to such an alien for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest.

Section 209 of the Act (emphasis added).

## B. Analysis

The statutory language in section 209(a)(2) envisions that Immigration Judges may be involved in proceedings to determine the admissibility of refugees.

Following her conviction for second-degree robbery in 1996, the respondent reapplied for refugee status on April 30, 1998. Her application included a request for a waiver of her criminal conviction under section 209(c) of the Act. The Immigration and Naturalization Service denied the application on May 12, 1998. The respondent was then placed in the present removal proceedings.

At the time of the district director's denial, the regulations implementing section 209 of the Act were as stated by the majority and applied to deportation proceedings. However, soon after the initial hearing before the Immigration Judge on June 29, 1998, the regulations governing section 209 were amended to apply expressly to removal proceedings.

Specifically, 8 C.F.R. § 209.1(e) (1999) now provides that following notification by the district director that an alien's request for adjustment of status has been denied,

> [t]he director will, in the same denial notice, inform the applicant of his or her right to *renew the request for permanent residence* in removal proceedings under section 240 of the Act. There is no appeal of the denial of an application by the director, but such denial will be without prejudice to the alien's right to *renew* the application in removal proceedings under part 240 of this chapter. (Emphasis added.)

This language, taken in conjunction with section 209 of the Act listed above, establishes that Immigration Judges have authority over the *renewal* of requests for adjustment of status by refugees in removal proceedings. Importantly, the respondent's request for permanent residence included a request for a waiver under section 209(c) of the Act, a waiver she needed because of her robbery conviction. A *renewal* of her request for permanent

residence would certainly seem, by necessity, to include a *renewal* of her waiver request.

In addition, the regulations, at 8 C.F.R. § 240.1(a) (1999), provide further support for the consideration of such a waiver by Immigration Judges. That regulation contains an extensive list of the specific powers designated to the Immigration Judge. Waivers of inadmissibility under section 209(c) of the Act are not specifically listed. Following the description of specific powers, however, 8 C.F.R. § 240.1(a) states that "[s]ubject to any specific limitation prescribed by the Act and this chapter, immigration judges shall *also* exercise the discretion and authority conferred upon the Attorney General by the Act as is appropriate and necessary for the disposition of such cases." (Emphasis added.)

The Attorney General has been given authority over section 209(c) waivers of inadmissibility. Immigration Judges have been delegated authority over removal proceedings, including those discretionary powers of the Attorney General as are "appropriate and necessary" to dispose of such cases. Finally, the regulation at 8 C.F.R. § 209.1(e) specifically allows aliens to renew refugee adjustment claims before the Immigration Judges. The authority of Immigration Judges to exercise jurisdiction over section 209 waivers flows from these statutory and regulatory provisions.[1]

The general conferral of authority by the Attorney General to the Immigration Judges in 8 C.F.R. § 240.1(a) is subject only to any specific limitation in the Act or the regulations. The Service has not pointed to any such limitation. If the general grant of "appropriate and necessary" authority is to have any meaning and significance, it logically would have to be in addition to the specific powers listed within 8 C.F.R. § 240.1(a), or else be rendered superfluous.

Furthermore, 8 C.F.R. § 209.1(e) specifically precludes an appeal of the district director's determination. Thus, under the Service's proposed construction of the regulation, an alien would have no ability to seek a second opinion from any administrative adjudicator on a section 209(c) waiver request. Moreover as a practical matter, the alien's regulatory right to renew the request for permanent residence would be completely negated in any case where a section 209(c) waiver was needed. Anomalies such as these

---

[1]The majority correctly notes that 8 C.F.R. § 240.11(a)(2) (1999) allows aliens to apply for waivers of inadmissibility before Immigration Judges in conjunction with any application for lawful permanent resident status. This regulatory linking of applications and waivers provides general support for an Immigration Judge's authority over a section 209(c) waiver, even if the permanent resident applications referenced in 8 C.F.R. § 240.11(a)(2) are limited to those identified in the prior subparagraph of that regulation, 8 C.F.R. § 240.11(a)(1), which do not include refugee applications for admission as a permanent resident under section 209(a).

point strongly away from the regulatory construction proposed by the Service.

Consequently, I agree with the majority that the Immigration Judge had authority to grant the respondent a waiver of inadmissibility under section 209(c) of the Act. Accordingly, I now turn to the question whether the respondent merits a grant of such waiver as a matter of discretion.

## II. DISCRETIONARY WAIVER

### A. Factual Background

The respondent is a 37-year-old female, native and citizen of Cambodia, who came to the United States in 1984 as a refugee. She has two children from her first husband, one born here and one in Cambodia. The non-United States citizen child has refugee status here.

After 2 years in the United States, the respondent separated from her husband and met her current companion (whom she describes as her husband after apparently going through some form of traditional marriage ceremony despite not being divorced from her first husband). The respondent and her companion have three children together, all of whom are minors. Including the two children from her previous marriage, the respondent has five children ranging in age from 4 to 19 years. In addition, the respondent's father and two siblings have refugee status here. The respondent testified that her mother, aunt, and cousins are also here; however, their status is unknown.

In 1996, the respondent was convicted of second-degree robbery under section 211 of the California Penal Code, which is classified as a "serious felony" under section 1192.7(c)(19) of the California Penal Code and is considered a crime involving moral turpitude. *See* California Penal Code §§ 211, 1192.7(c)(19) (West 1997-98). The respondent was sentenced to 3 to 6 years' incarceration and had her immigration parole status revoked on May 5, 1998.

Following the Service's denial of her request for adjustment of status and a waiver of inadmissibility under section 209 of the Act, the respondent renewed her request for such relief before the Immigration Judge. During the hearing before the Immigration Judge, the respondent testified extensively as to her noninvolvement in the robbery of which she was convicted.

### B. Respondent's Testimony

The respondent testified that the gunman, who apparently is involved in gangs and weapons, threatened her and insisted that she go to the victim's house. The respondent specifically stated, however, that she had no prior

knowledge that the robbery (or the shooting) was to be committed. In addition, she testified that she did not assist in the robbery in any way.

After the shooting, the respondent stated that she "called the neighborhood to help me out." The police came and she was in shock and afraid. The gunman called her at home and threatened to kill her and her family if she told what had happened.

The respondent testified further that she did not know the victim and did not know what was taken from her. She was only accompanying the other female involved, who wanted to borrow a videotape. According to the respondent, it was this other female coconspirator and the gunman who planned the robbery. Although the respondent knew they had spoken about some plan, she did not know the details.

The respondent testified that she pled guilty because there was a poor translation during her hearing as well as during the time she spoke to her public defender. She alleged that the public defender did not discuss the facts of her case before asking her to accept a plea agreement. She was, in effect, "forced" to plead guilty to the robbery because she thought she would receive a sentence of 25 years in prison for murder.

## C. Documentary Evidence

In contrast to the respondent's testimony, a probation officer's report submitted into the record as an exhibit[2] states that the respondent and two coconspirators, a male and a female, conspired to rob another woman (the victim) of a large quantity of money. They agreed that there would be no shooting involved and that no one would be hurt. The respondent and the female coconspirator went to the victim's house on the pretense of borrowing some milk. They all talked for awhile until there was a knock on the door. The respondent suggested to the victim that it was probably her coconspirator's son, and the victim then opened the door. Once the door was open, the male coconspirator, armed with a handgun, forced his way into the apartment. He was accompanied by another male and they told everyone to lie down on the floor. The respondent and her female coconspirator were loosely tied up.

The male coconspirator (the gunman) then demanded money from the victim. When she refused to provide it, the gunman shot her in the head at close range. He took the victim's purse with $500 cash inside and told the female coconspirators that he would kill them if they told anyone that he had committed the crime. The two males fled and the victim died at the

---

[2]The exhibit actually contains a record of conviction, a copy of the "information summary" for the respondent's arraignment hearing, and information from the probation officer's report.

scene, having been shot in front of her children. The report contains what is purported to be the respondent's statements regarding her criminal involvement. Specifically, the respondent is identified as indicating that the gunman was only supposed to rob the victim, not shoot her. She is quoted as saying that "it is terrible that he did this thing. [The gunman] . . . had said that he would shoot me if I told the police that he committed this crime."

In addition, the record contains a report from the Service district director in which he states that the respondent appears to have no remorse or rehabilitation. He notes that the respondent has failed to show the ability to provide for her family. The district director states further that granting a waiver to her could entail substantial risk to society. He recommends denying the waiver.

In support of the respondent's case, the record contains numerous letters testifying to the good nature of the respondent, including a letter from her oldest daughter which states that she misses her mother. There is also a letter from the respondent's former case manager which states that the respondent does not fit the criteria of a hardened criminal. The case manager writes that the respondent is a caring person who should not be viewed as having criminal tendencies and who is repentant for the contribution she may have made, "wittingly or unwittingly," to the crime. In contrast to the district director's report noted above, the case manager feels that the respondent has the capability to redeem herself in society because of her favorable personality traits. Finally, there is a letter from the respondent to the Immigration Judge in which she expresses remorse for what she did in 1993.

## D. Analysis

It is clear from his decision that the Immigration Judge found the respondent's testimony credible and accepted her testimony, while at the same time acknowledging her plea of guilty. In effect, the Immigration Judge attempted to give credence to both the respondent's testimony and the documentary evidence conflicting with her testimony, but ultimately placed more weight on her claim of innocence. Having reviewed the evidence of record, I am unable to agree with the Immigration Judge's determination that the respondent was largely uninvolved in the crime of which she was convicted. I recognize that the criminal justice system is not perfect and that, on occasion, innocent people are convicted. Nonetheless, we cannot go beyond the conviction record to redetermine guilt or innocence, and I am not willing to accept the respondent's assertion of complete innocence.

The respondent acknowledged her guilt within a criminal proceeding,

and her guilty plea is completely inconsistent with her present claims of innocence. She has not shown that she continued to profess her innocence to the California criminal court, while agreeing to plead guilty in order to avoid a lengthier sentence. *Cf. North Carolina v. Alford,* 400 U.S. 25 (1970) (allowing a defendant's plea of guilt, while professing his innocence, to avoid the death penalty).

Furthermore, the documentary evidence of record noted above is also inconsistent with the respondent's testimony before the Immigration Judge. The probation officer's report has not been shown to contain an incorrect account of the crime committed. It portrays her as being substantially involved in the conspiracy to rob the victim. The only evidence to refute her involvement in the crime is the respondent's own testimony, which I am unwilling to credit in the face of her plea and the corroborating documentary evidence. *Accord Matter of Mendez*, 21 I&N Dec. 296 (BIA 1996) (rejecting in part the alien's comprehensive claim of innocence based on the conviction record and inconsistent documentary evidence contained in the record). I note also that the respondent's testimony regarding her complete innocence appears to conflict with her letter to the Immigration Judge in which she wrote, "I am very sorry for what I did and wouldn't do this kind of thing again. I feel very bad about what happened in 93. . . . I want to make up for all I did wrong." Even accepting that she was unaware of the ultimate possibility of a murder, robbery is a serious crime for which the respondent was sentenced to 3 to 6 years.

In light of the seriousness of the respondent's crime, as well as the length of her sentence, I do not agree that the respondent has met her burden of proof in these proceedings through her protestations of innocence or her otherwise sympathetic family and personal circumstances. There is simply no support for the respondent's testimony, and I find that the evidence of record establishes her culpability in the robbery. Having said this, I disagree with the finding of the Immigration Judge and the majority that the respondent's crime of robbery, which resulted in a murder, is outweighed by her equities, as substantial as they may be.

### III. CONCLUSION

In sum, I concur in the majority's determination that this Board and the Immigration Judges have authority to grant or deny a waiver of inadmissibility pursuant to section 209(c) of the Act, in conjunction with the renewal of a request for permanent residence under section 209. However, for the foregoing reasons, I do not agree with the majority's finding that the respondent has met her burden of showing that she merits the grant of such a waiver and, therefore, I dissent.

*DISSENTING OPINION:* Patricia A. Cole, Board Member, in which

Michael J. Heilman, Board Member, joined

I agree with the majority that the initial issue in this case is one of statutory and regulatory interpretation. However, I am not persuaded by the majority's determination that this Board and the Immigration Judge have jurisdiction over an alien's application for a waiver of inadmissibility under section 209(c) of the Immigration and Nationality Act, 8 U.S.C. § 1159(c) (1994 & Supp. II 1996). Rather, I find that the statute and regulations governing the adjustment of status of refugees are clear in according the authority to grant a waiver under section 209(c) solely to the Immigration and Naturalization Service. Therefore, I respectfully dissent.

## I. INTRODUCTION

As the majority notes in its decision, the following general rules govern the jurisdictional issue in this case. Specifically, there is "no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *Perry v. Commerce Loan Co.,* 383 U.S. 392, 400, *reh'g denied*, 384 U.S. 934 (1966). If the statutory language is clear, that is the end of the inquiry, as Immigration Judges and this Board, as well as the courts, "'must give effect to the unambiguously expressed intent of Congress.'" *Matter of W-F-,* 21 I&N Dec. 503, at 506 (BIA 1996) (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 (1984)); *see also Gonzalez v. McNary,* 980 F.2d 1418, 1420 (11th Cir. 1993). The same is true of regulations. *Diaz v. INS*, 648 F. Supp. 638 (E.D. Cal. 1986) (citing *Malat v. Riddell*, 383 U.S. 569, 571 (1966)). It is assumed that the legislative purpose is expressed by the ordinary or plain meaning of the words used. *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987); *Matter of Fesale*, 21 I&N Dec. 114 (BIA 1995); *see also Malat v. Riddell, supra*, at 571.

## II. STATUTORY ANALYSIS

### A. Section 209 of the Act

Section 209 of the Act states, in pertinent part:

(a) CRITERIA AND PROCEDURES APPLICABLE FOR ADMISSION AS IMMIGRANT; EFFECT OF ADJUSTMENT.—(1) Any alien who has been admitted to the United States under section 207—

(A) whose admission has not been terminated by the Attorney General pursuant to such regulations as the Attorney General may prescribe,

(B) who has been physically present in the United States for at least one year, and

(C) who has not acquired permanent resident status, shall, at the end of such year period, return or be returned to the custody of the Service for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 235, 240, and 241 [1225, 1229a, and 1231].

(2) Any alien who is found upon inspection and examination by an immigration officer pursuant to paragraph (1) or after a hearing before an immigration judge to be admissible (except as otherwise provided under subsection (c)) as an immigrant under this Act at the time of the alien's inspection and examination shall, notwithstanding any numerical limitation specified in this Act, be regarded as lawfully admitted to the United States for permanent residence as of the date of such alien's arrival into the United States.

. . . .

(c) APPLICABILITY OF OTHER FEDERAL STATUTORY REQUIRE-MENTS—The provisions of paragraphs (4), (5), and (7)(A) of section 212(a) shall not be applicable to any alien seeking adjustment of status under this section, and the Attorney General may waive any other provision of such section (other than paragraph (2)(C) or subparagraph (A), (B), (C), or (E) of paragraph (3)) with respect to such an alien for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest.

## B. Discussion

Section 209 of the Act provides the *criteria and procedures* applicable for admission as an immigrant. Aliens granted refugee status and admitted to the United States under section 207 of the Act, 8 U.S.C. § 1157 (1994 & Supp. II 1996), whose admission has not yet been terminated and who have been in the United States for at least 1 year and have not yet acquired permanent resident status, are to "be returned to the custody of the Service for inspection and examination for admission to the United States as an immigrant in accordance with the provisions of sections 235, 240, and 241 [1225, 1229a, and 1231]." Section 209(a)(1)(C) of the Act.

Section 209(a)(2) of the Act relates to the *effect* of adjustment of status on refugees. The effect is that the effective date of the alien's lawful admission is retroactive to the date of the alien's arrival in the United States pursuant to section 207 and that the annual refugee numerical limitations are not applicable. The reference in section 209 to a hearing before an Immigration Judge does make clear that an Immigration Judge may be involved in proceedings to determine the admissibility of a refugee and to grant lawful permanent residence. However, the reference is to a finding of admissibility and lawful status by an Immigration Judge in the appropriate removal proceedings under section 240 of the Act, 8 U.S.C. § 1229a (Supp. II 1996). It does not provide an Immigration Judge jurisdiction to grant a section 209(c) waiver,

which is within the exclusive jurisdiction of the Service.

## III. REGULATORY PROVISIONS

### A. 8 C.F.R. § 209.1

The regulations at 8 C.F.R. § 209.1 (1999) specifically provide "*the sole and exclusive procedure for adjustment of status by a refugee admitted under section 207 of the Act whose application is based on his or her refugee status*." (Emphasis added.) The pertinent regulation provides as follows:

> The director [of the Service] will notify the applicant in writing of the decision of his or her application for admission to permanent residence. If the applicant is determined to be inadmissible or no longer a refugee, the director will deny the application and notify the applicant of the reasons for the denial. The director will, in the same denial notice, *inform the applicant of his or her right to renew the request for permanent residence in removal proceedings under section 240 of the Act. There is no appeal of the denial of an application by the director, but such denial will be without prejudice to the alien's right to renew the application in removal proceedings under part 240 of this chapter.*

8 C.F.R. § 209.1(e) (emphasis added).

### B. Discussion

This regulation clearly provides that there is no appeal from the district director's decision to deny an alien's application for adjustment of status. Rather, the alien has the right to renew his or her request before an Immigration Judge. What I emphasize here, however, is that the right to renew the request is actually secondary to what is the initial determination made by the Immigration Judge on admissibility. Once this condition precedent, i.e., a request for and determination of admissibility, has been met, the regulations make clear that the alien is entitled to apply for any and all relief that the Immigration Judge has authority to grant in removal proceedings under section 240 of the Act.

Furthermore, an Immigration Judge's authority in removal proceedings is specifically delineated in 8 C.F.R. § 240.1(a) (1999). This regulation lists specific powers delegated to the Immigration Judges, including jurisdiction to determine applications for asylum, withholding of removal, adjustment of status, and waivers of inadmissibility under section 212 of the Act, 8 U.S.C. § 1182 (1994 & Supp. II 1996). However, there is no specific authority granted over applications for adjustment of status for refugees, including applications for a waiver of inadmissibility under section 209(c) of the Act. Rather, refugees who have been denied adjustment of status

under section 209 are informed of the Service's decision and then placed, upon request, in removal proceedings, where they begin the process of establishing admissibility before an Immigration Judge.

Although 8 C.F.R. § 240.1(a) also provides that Immigration Judges are granted authority "as is appropriate and necessary for the disposition of such cases," I do not agree that this refers to any proceedings other than those held pursuant to section 240 of the Act. As noted above, section 209 refugee proceedings are not "such cases" deemed within the purview of an Immigration Judge's authority. Therefore, I would not find the "appropriate and necessary" language of § 240.1(a) to modify or enhance anything other than the powers specifically delineated in that section.

## IV. CONCLUSION

The statute and the regulations provide that a refugee determined by the Service district director to be inadmissible can renew an application for admission and adjustment of status to permanent residence in removal proceedings under section 240 of the Act. The only available waivers of inadmissibility are those associated with determinations of admissibility in removal proceedings pursuant to 8 C.F.R. § 240.1. There is no authority for Immigration Judges or this Board to exercise jurisdiction over an alien's application for a waiver of inadmissibility pursuant to section 209(c) of the Act in removal proceedings. Therefore, I dissent.