# In re K-A-, Respondent

*Decided as amended on June 23, 2004*[1]

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  Pursuant to 8 C.F.R. § 1209.2(c) (2004), once an asylee has been placed in removal proceedings, the Immigration Judge and the Board of Immigration Appeals have exclusive jurisdiction to adjudicate the asylee's applications for adjustment of status and a waiver of inadmissibility under sections 209(b) and (c) of the Immigration and Nationality Act, 8 U.S.C. §§ 1159(b) and (c) (2000). *Matter of H-N-*, 22 I&N Dec. 1039 (BIA 1999), distinguished.

(2)  Termination of a grant of asylum pursuant to section 208(c)(2) of the Act, 8 U.S.C. § 1158(c)(2) (2000), is not mandatory with respect to an asylee who qualifies for and merits adjustment of status and a waiver of inadmissibility under sections 209(b) and (c) of the Act.

FOR RESPONDENT:  Ian Bratlie, Esquire, York, Pennsylvania

FOR THE DEPARTMENT OF HOMELAND SECURITY:[2]  Raphael A. Sánchez, Assistant Chief Counsel

BEFORE:  Board Panel:  FILPPU, COLE, and HESS, Board Members.

COLE, Board Member:

The Department of Homeland Security ("DHS"), formerly the Immigration and Naturalization Service, appeals from the decision of an Immigration Judge dated October 7, 2003, granting the respondent's application for adjustment of status in conjunction with a waiver of inadmissibility pursuant to sections 209(b) and (c) of the Immigration and Nationality Act, 8 U.S.C. §§ 1159(b) and (c) (2000), respectively.  The appeal will be dismissed.

---

[1]  On our own motion, we amend the May 20, 2004, order in this case.  The amended order makes editorial changes consistent with our designation of the case as a precedent.

[2]  The functions of the Immigration and Naturalization Service have been transferred to the Department of Homeland Security pursuant to the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135.  The transfer occurred on March 1, 2003.  *See Matter of D-J-*, 23 I&N Dec. 572, 573 n.1 (A.G. 2003).

## I.  BACKGROUND

The respondent, a native and citizen of Nigeria, was admitted to the United States in September 1992 as a nonimmigrant visitor.  On March 6, 1995, she was granted asylum in the United States.  She is the mother of two United States citizen children, one of whom suffers from cerebral palsy.  On August 21, 1997, she committed the offense of second-degree criminal possession of a forged instrument in violation of section 170.25 of the New York Penal Law.  This crime resulted in a 2001 conviction, for which the respondent was sentenced to a term of imprisonment of at least 1 year.

The present removal proceedings commenced on April 16, 2003, when the DHS filed a Notice to Appear (Form I-862) with the Immigration Court. The Notice to Appear charged that the respondent is subject to removal from the United States as an alien convicted of a crime involving moral turpitude committed within 5 years after admission under section 237(a)(2)(A)(i) of the Act, 8 U.S.C. § 1227(a)(2)(A)(i) (2000), and as an alien convicted of an aggravated felony under section 237(a)(2)(A)(iii) of the Act.  On May 30, 2003, the DHS also issued a notice of intent to terminate the respondent's asylee status on the ground that she had been convicted of an aggravated felony.

At a hearing before the Immigration Judge on June 9, 2003, the DHS formally requested that the Immigration Judge terminate the respondent's status as an asylee.  On July 2, 2003, the respondent conceded that she was removable as charged but expressed an intention to file an application for adjustment of status under section 209(b) of the Act in conjunction with a request for a waiver of inadmissibility under section 209(c).

On October 7, 2003, the Immigration Judge issued a written interim decision in support of her jurisdiction to adjudicate the respondent's applications for relief.  Although the Immigration Judge acknowledged that the respondent's asylee status was subject to termination, she concluded that the respondent's adjustment of status would constitute "relief from termination."  In a formal oral decision, also issued on October 7, 2003, the Immigration Judge granted the respondent's applications in the exercise of discretion based on the hardship that the respondent's removal to Nigeria would cause to her severely disabled United States citizen child.  The DHS filed this timely appeal, which is opposed by the respondent.

## II.  ISSUES ON APPEAL

On appeal, the DHS argues that the Immigration Judge lacked jurisdiction to adjudicate the respondent's applications for relief under section 209 of the Act. Specifically, the DHS asserts that it has original jurisdiction over applications for adjustment of status and waivers of inadmissibility under section 209 of the Act, and that an Immigration Judge may consider such applications, if at all, only if they have been *renewed* in removal proceedings after administrative denial by the DHS.  To support this argument, the DHS relies on our decision in *Matter*

*of H-N-*, 22 I&N Dec. 1039 (BIA 1999), which held that an Immigration Judge could exercise jurisdiction over a refugee's application for a section 209(c) waiver only after that application had been denied administratively by the former Immigration and Naturalization Service. It is undisputed that the respondent's applications for relief were never submitted to the DHS for consideration.

Alternatively, the DHS argues that the Immigration Judge erred in adjudicating the respondent's application for section 209 relief when her asylee status was subject to termination because of her admitted aggravated felony conviction. According to the DHS, the Immigration Judge was obliged to adjudicate its request for termination of the respondent's asylee status before considering any of her applications for relief.

## III. ANALYSIS

### A. Adjustment of Status Under Section 209(b) of the Act

Section 209 of the Act grants the Attorney General authority to define standards by which an alien granted refugee status or asylum may apply to become a lawful permanent resident of the United States, subject to various statutory limitations. To be eligible for adjustment of status under section 209 of the Act, an alien who has been granted asylum must actually apply for such relief and must demonstrate to the Attorney General's satisfaction that she has been physically present in the United States for at least 1 year after being granted asylum, that she continues to be a "refugee" under section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (2000), that she is not "firmly resettled" in any foreign country, and that she is admissible to the United States as an immigrant. Section 209(b) of the Act. With respect to the admissibility requirement, however, section 209(c) of the Act confers discretionary authority on the Attorney General to waive certain grounds of inadmissibility "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest."

To implement the statutory requirements of section 209 of the Act, the Attorney General has promulgated two separate regulations. The first regulation, 8 C.F.R. § 1209.1 (2004), applies to aliens who were admitted to the United States as refugees pursuant to section 207 of the Act, 8 U.S.C. § 1157 (2000 & Supp. I 2001). This regulation was the subject of our decision in *Matter of H-N-*, *supra*. The second regulation, 8 C.F.R. § 1209.2 (2004), applies to aliens—such as the present respondent—who were granted asylum pursuant to section 208 of the Act, 8 U.S.C. § 1158 (2000 & Supp. I 2001), while physically present in the United States or while seeking admission at a port of entry. Thus, the first question to be decided on appeal is whether 8 C.F.R. § 1209.2 confers authority upon the Immigration Judge to adjudicate the respondent's applications for adjustment of status and a waiver of inadmissibility. We conclude that it does.

As the Immigration Judge observed in her October 7, 2003, interim decision, 8 C.F.R. § 1209.2(c) specifies that applications for adjustment of status under

section 209 of the Act "can be filed and considered only in proceedings under section 240 of the Act" if the applicant has been placed in such proceedings by the DHS.[3]  This language is unequivocal and admits of no other interpretation than that Immigration Judges possess original and exclusive jurisdiction to adjudicate applications for adjustment of status filed by aliens granted asylum under section 208 of the Act who, like the respondent, have been placed in removal proceedings.

The regulation's text contains no similar language expressly granting Immigration Judges the authority to adjudicate waiver requests under section 209(c) of the Act.  We conclude, however, that the existence of such authority is conferred by 8 C.F.R. § 1240.11(a) (2004)—the regulation governing Immigration Judges' authority to adjudicate applications for adjustment of status in removal proceedings—which provides in pertinent part that Immigration Judges have authority to adjudicate requests for waivers of inadmissibility "[i]n conjunction with *any* application for creation of status of an alien lawfully admitted for permanent residence made to an immigration judge."  8 C.F.R. § 1240.11(a)(2) (emphasis added).  Similarly, in elucidating the scope of Immigration Judges' authority in general, 8 C.F.R. § 1240.1(a)(2) (2004) provides that "[s]ubject to any specific limitation prescribed by the Act and [the regulations], immigration judges shall . . . exercise the discretion and authority conferred upon the Attorney General by the Act as is appropriate and necessary for the disposition of . . . cases."  Reading these regulations in conjunction with the express language of 8 C.F.R. § 1209.2(c), and recognizing that a section 209(c) waiver is often a sine qua non for adjustment of status under section 209(b), we conclude that an Immigration Judge's jurisdiction over an application for section 209(b) adjustment filed by an asylee in removal proceedings necessarily implies the existence of supplemental jurisdiction over that same asylee's request for a waiver under section 209(c) of the Act.[4]  Accordingly, we conclude that the Immigration Judge correctly asserted jurisdiction over the respondent's applications for such relief.

## B.  Termination of Asylee Status in Removal Proceedings

We now turn to the second question raised on appeal:  whether the Immigration Judge erred by adjudicating applications for section 209 relief filed by an alien whose status as an asylee was subject to termination because of her conviction for an aggravated felony.  Section 208(c)(2) of the Act provides that

---

[3]  As a result of the transfer of the functions of the Immigration and Naturalization Service to the Department of Homeland Security, the regulations in chapter I of the Code of Federal Regulations were transferred or duplicated to a new chapter V, so the regulation cited by the Immigration Judge, 8 C.F.R. § 209.2(c), is now codified at 8 C.F.R. § 1209.2(c).  *See* Aliens and Nationality; Homeland Security; Reorganization of Regulations, 68 Fed. Reg. 9824, 9835 (Feb. 28, 2003), 2003 WL 553495.

[4]  To the extent that dicta in *Matter of H-N-*, *supra*, may be read to support a contrary result, we withdraw from that part of the decision.

a grant of asylum does not automatically entitle an alien to lawful permanent resident status in the United States, and that an asylum grant may be terminated by the Attorney General if any of the following apply: (1) the alien ceases to be a "refugee" under section 101(a)(42)(A) of the Act "owing to a fundamental change in circumstances"; (2) the alien is determined by the Attorney General to be undeserving of asylum protection on grounds of national security or as a result of criminal or persecutory acts of the alien, or because the alien is firmly resettled in a foreign country; (3) the alien may be removed to a safe third country by means of a bilateral or multilateral agreement; (4) the alien has returned to his or her country of nationality as an actual or potential permanent resident; or (5) the alien has acquired a new nationality and enjoys the protection of the country of his or her new nationality.

It is undisputed that the respondent's asylee status is subject to termination based upon her admitted aggravated felony conviction. *See* 8 C.F.R. §§ 1208.13(c)(2)(i)(D), 1208.24(a)(3) (2004). Moreover, the Immigration Judge plainly had authority to order the respondent's asylee status terminated. *See* 8 C.F.R. § 1208.24(f) (2004). The DHS insists, however, that the Immigration Judge was *obliged* to terminate the respondent's asylee status prior to considering whether she was eligible for relief under section 209 of the Act. According to the DHS, any other approach would defeat congressional intent by permitting asylees convicted of aggravated felonies to apply for section 209 relief despite the fact that they would presently be ineligible for asylum itself.

Both section 208(c)(2) of the Act and its implementing regulation, 8 C.F.R. § 1208.24, provide that the Attorney General *may* determine whether an enumerated basis for termination of asylum exists and that the Attorney General *may* terminate an alien's asylee status if such a basis is found to exist. The statute, by its terms, does not provide for *automatic* termination of asylee status; rather, it authorizes—but does not compel—the Attorney General to act. Viewing the statutory and regulatory language in this light, we find no reversible error in the Immigration Judge's decision to defer judgment on the termination question pending consideration of the respondent's applications for relief under sections 209(b) and (c) of the Act.

The DHS's position on appeal—that the Attorney General is obliged to terminate asylee status whenever possible—does not find support in the plain language of the statute or regulation. In essence, the DHS urges us to construe the permissive language of section 208(c)(2) and 8 C.F.R. § 1208.24 as if it were mandatory, so as to avoid frustrating an unspoken but implied congressional "policy" against permitting aliens convicted of aggravated felonies to seek section 209 relief. We are not persuaded by the DHS's argument.

It is axiomatic that when interpreting the Immigration and Nationality Act, we look first to the terms of the statute itself; if those terms, on their face, constitute a plain expression of congressional intent, they must be given effect. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984). Moreover, the legislative purpose is presumed to be expressed by the ordinary meaning of the words used. *INS v. Phinpathya*,

464 U.S. 183, 189 (1984). In this instance, Congress plainly employed permissive language to describe the Attorney General's role in terminating an alien's asylee status. Such language denotes a conferral of discretionary authority, not a mandate.

The Supreme Court has acknowledged that the verb "may" can be interpreted to mean "shall" under certain circumstances. *United States v. Rodgers*, 461 U.S. 677, 706 (1983). Such a construction is particularly disfavored, however, when Congress has employed the two different verbs in adjacent statutory passages. *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947) (stating that "when the same Rule uses both 'may' and 'shall,' the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory"); *see also Sheppard v. Riverview Nursing Center, Inc.*, 88 F.3d 1332, 1338 (4th Cir. 1996).

Section 208(c)(1) of the Act contains three subparagraphs, which respectively provide that the Attorney General "*shall not* remove or return" an alien granted asylum to his or her country of nationality, "*shall* authorize" an alien granted asylum to engage in employment, and "*may* allow" such an alien to travel abroad. (Emphasis added.) Section 208(c)(2), at issue here, provides that if the Attorney General determines that a valid ground for termination exists, an alien's asylee status "*may* be terminated." (Emphasis added.) Finally, section 208(c)(3) provides that the removal of an alien who is described in paragraph (2) "*shall* be directed by the Attorney General." (Emphasis added.) We conclude that Congress, by systematically employing "may" and "shall" in the language of each paragraph of section 208(c), manifested its understanding of the difference between the two verbs and communicated its intention that they be interpreted in accordance with their ordinary meanings.

The DHS expresses concern that an Immigration Judge's discretionary decision to defer the termination of asylee status will permit some aliens convicted of aggravated felonies to obtain relief under section 209(b) of the Act that would not otherwise be available to them. Even were we to assume that the DHS has valid concerns on this score, it should be emphasized that relief under sections 209(b) and (c) of the Act is *discretionary*. The Attorney General has communicated in unequivocal terms that he is not inclined to exercise his discretion favorably with respect to aliens who have been convicted of dangerous or violent crimes except in the most exceptional circumstances. *Matter of Jean*, 23 I&N Dec. 373, 383 (A.G. 2002). Indeed, even nonviolent aggravated felonies will generally constitute significant negative factors militating strongly against a favorable exercise of discretion.
Thus, an alien convicted of an aggravated felony will become the beneficiary of the Attorney General's discretion under sections 209(b) and (c) only in those rare situations where he or she successfully demonstrates the existence of truly compelling countervailing equities, such as those present in the instant case.

## IV.  CONCLUSION

In sum, we conclude that the Immigration Judge possessed original and exclusive jurisdiction to adjudicate the respondent's application for adjustment of status under section 209(b) of the Act, and that the Immigration Judge's jurisdiction over that application necessarily implied the existence of supplemental jurisdiction over her application for a waiver of inadmissibility under section 209(c).  Furthermore, although the Immigration Judge had authority to terminate the respondent's asylee status on the basis of her aggravated felony conviction, the Immigration Judge did not commit reversible error when she deferred consideration of the DHS's termination request pending adjudication of the respondent's applications for relief under section 209 of the Act.  Accordingly, the appeal will be dismissed.

**ORDER:** The appeal of the Department of Homeland Security is dismissed.