**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

JOSE GUADALUPE TORRES-VALDIVIAS, AKA Guadalupe Torres,

*Petitioner*,

v.

ERIC H. HOLDER, JR., Attorney General,

*Respondent*.

</td>
<td>

No. 11-70532

Agency No.
A079-643-573

OPINION

</td>
</tr>
</table>

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
August 11, 2014—San Francisco, California

Filed September 5, 2014

Before: Barry G. Silverman and Richard R. Clifton, Circuit Judges, and Derrick Kahala Watson, District Judge.[*]

Opinion by Judge Clifton

---

[*] The Honorable Derrick Kahala Watson, U.S. District Judge for the District of Hawaii, sitting by designation.

**SUMMARY**[**]

### Immigration

The panel dismissed in part and denied in part Jose Guadalupe Torres-Valdivias's petition for review of the Board of Immigration Appeals' decision denying his application for adjustment of status.

The panel upheld the Board of Immigration Appeals' decision not to apply the categorical approach when making a discretionary determination such as the one here regarding whether petitioner's sexual battery conviction triggered the standard under *Matter of Jean*, 23 I. & N. Dec. 373 (Att'y Gen. 2002) (establishing a heightened standard that aliens convicted of violent or dangerous crimes must satisfy for discretionary relief). The panel held that the determination of whether a crime is violent or dangerous under *Matter of Jean* is discretionary and therefore unreviewable under 8 U.S.C. § 1252(a)(2)(B). The panel upheld the BIA's extension of the *Matter of Jean* standard to applications for adjustment under 8 U.S.C. § 1255(i). The panel also held that *Matter of Jean* applies to cases previously governed by *Matter of Arai*, 13 I. & N. Dec. 494 (BIA 1970) (the BIA's precedent decision addressing the proper standard in § 1255 adjustment cases), provided that the alien was convicted of a violent or dangerous crime.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Lamar Peckham, Santa Rosa, California, for Petitioner.

Stuart F. Delery, Acting Assistant Attorney General, Civil Division, Mary Jane Candaux, Assistant Director, Kiley L. Kane, Senior Litigation Counsel, and Gary J. Newkirk (argued), Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

**OPINION**

CLIFTON, Circuit Judge:

Petitioner Jose Guadalupe Torres-Valdivias petitions for review of a Board of Immigration Appeals' ("BIA") decision upholding a final order of removal against him. In deciding this case, we consider the scope of the Attorney General's decision in *Matter of Jean*, 23 I. & N. Dec. 373 (Att'y Gen. 2002), which established a heightened standard that aliens convicted of violent or dangerous crimes must satisfy to be granted discretionary relief from removal.

Torres-Valdivias was placed in removal proceedings, where he applied for and was denied adjustment of status under 8 U.S.C. § 1255(i). The BIA held that Torres-Valdivias's sexual battery conviction was a violent or dangerous crime and, on that basis, applied the *Matter of Jean* standard to guide the exercise of its discretion. In making the violent or dangerous crime determination, the BIA considered the facts underlying Torres-Valdivias's sexual battery offense as testified to by Torres-Valdivias at his removal hearing and

as stated in police reports from the time of the offense. Applying the *Matter of Jean* standard, the BIA denied Torres-Valdivias's adjustment of status application, as a matter of discretion.

We uphold the BIA's decision not to apply the categorical approach in the context of its discretionary decisions, such as the one at issue here. We also conclude that, where the correct legal standard is applied, the ultimate determination of whether a crime was violent or dangerous under *Matter of Jean* is discretionary and therefore unreviewable under 8 U.S.C. § 1252(a)(2)(B). Finally, we uphold the BIA's extension of the *Matter of Jean* standard to adjustment of status applications under 8 U.S.C. § 1255. Accordingly, we dismiss in part and deny in part Torres-Valdivias's petition for review.

## I.  Background

Petitioner Jose Guadalupe Torres-Valdivias, a native and citizen of Mexico, has resided in the United States since coming in illegally in 1989. He married a U.S. citizen, through whom he was granted conditional permanent resident status in 2003. That status was revoked in 2006, however, as a result of a 2001 conviction for sexual battery in violation of California Penal Code § 243.4(a). Upon revocation of his status, Torres-Valdivias was charged with being an alien illegally present in the United States and therefore removable under 8 U.S.C. § 1182(a)(6)(A)(i).

In removal proceedings in front of an Immigration Judge ("IJ"), Torres-Valdivias applied for adjustment of status under 8 U.S.C. § 1255(i). In adjudicating this application, the IJ considered the facts underlying Torres-Valdivias's sexual

battery conviction, including the facts as stated in his testimony at the removal hearing and as described in the police reports from the time of the offense. The facts found by the IJ are not in dispute:

> [Torres-Valdivias] first said that when he was 14 or 15, and the victim, his stepsister, was 10 or 11, he touched her on her breasts and vagina over her clothing once. He repeated this activity one more time, about a year later. He insisted he did nothing else. Later, after being confronted with the police reports in the case, he admitted that he touched her vagina while the victim was not wearing clothes. He subsequently admitted to forcing his finger into her vagina, and also getting on top of her and simulating sexual intercourse. [Torres-Valdivias] denied putting his penis into his stepsister's vagina and denied engaging in oral sex with her.

The IJ concluded that Torres-Valdivias's crime of sexual battery "was quite clearly violent or dangerous" and applied the heightened standard for granting discretionary relief from removal to violent or dangerous criminals established in *Matter of Jean*. Under this heightened standard, the IJ concluded, as a matter of discretion, that Torres-Valdivias's adjustment of status application should be denied and therefore ordered him removed.

Torres-Valdivias appealed to the BIA. On appeal, a three-member panel of the BIA agreed with the IJ's application of the heightened *Matter of Jean* standard to an adjustment of status application but remanded for the IJ to further analyze

whether Torres-Valdivias's offense was a violent or dangerous crime warranting application of that standard.

On remand, the IJ incorporated his prior decision by reference and provided more detailed facts and further legal analysis.[1] The IJ again concluded that Torres-Valdivias's crime of sexual battery constituted a violent or dangerous crime and denied, as a matter of discretion, his application for

---

[1] The IJ's full discussion of the facts on remand was as follows:

> A review of the documents in the file reveals the following about the circumstances of the crime. The victim in this case is [Torres-Valdivias's] stepsister. She told the police that [Torres-Valdivias] had engaged in non-consensual sexual intercourse with her at least five times, beginning when she was about five years of age and ending when she was fourteen. At the time of the last assault [Torres-Valdivias] was about nineteen years old. The victim told the police that [Torres-Valdivias] "would take her clothes off, as well as his own, and then sexually assault her. She said the suspect would place his erect penis into her vagina, kiss her mouth-to-mouth and place his mouth onto her vagina."

> [Torres-Valdivias] told the police that he had put his finger in the victim's vagina when she was nine and again when she was 12. He said he felt and kissed her breasts at least three or four times when the victim was 13 or 14 years old. He said he got on top of the victim and simulated sexual intercourse several times when she was about 9 years old. He denied having complete sexual intercourse with the victim and denied forcing any sexual acts on the victim. [Torres-Valdivias's] testimony at his removal hearing was in many respects the same as his police statement. However, he did acknowledge at the hearing that he had "force[d] his finger into her vagina" "[a] little bit."

adjustment of status. The IJ again ordered Torres-Valdivias removed and certified the case back to the BIA. The BIA adopted and affirmed the IJ's decision under *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994).

Torres-Valdivias timely petitioned this court for review of the final order of removal entered against him.

## II.  Jurisdiction and Standard of Review

The Immigration and Nationality Act ("INA") bars this court from exercising jurisdiction over various discretionary decisions of the immigration authorities, including "any judgment regarding the granting of relief under" 8 U.S.C. § 1255. 8 U.S.C. § 1252(a)(2)(B)(i). The BIA's ultimate discretionary decision to deny Torres-Valdivias adjustment of status under 8 U.S.C. § 1255(i) is therefore unreviewable. Pursuant to 8 U.S.C. § 1252(a)(2)(D), however, this court retains jurisdiction over constitutional questions and questions of law. We review questions of law de novo. *Annachamy v. Holder*, 733 F.3d 254, 258 (9th Cir. 2013).

## III.    Discussion

Torres-Valdivias's petition for review raises various issues framed as questions of law, namely: (1) whether the BIA erred in not applying the categorical approach in determining whether Torres-Valdivias's crime was violent or dangerous for purposes of applying *Matter of Jean*; (2) whether the BIA committed an error of law when it determined that Torres-Valdivias's crime was violent or dangerous; and (3) whether *Matter of Jean* is applicable in the context of an adjustment of status application under 8 U.S.C.

§ 1255(i).[2] With respect to the first and third issues, we agree with Torres-Valdivias that they present questions of law but disagree with him on the merits. With respect to the second issue, however, we conclude that it presents a challenge to a discretionary decision of the BIA and that we therefore lack jurisdiction to review it.

### A.  Applicability of the Categorical Approach

The heightened standard of *Matter of Jean* applies by its own terms only to aliens convicted of violent or dangerous crimes. 23 I. & N. Dec. at 383; *see also Matter of K–A–*, 23 I. & N. Dec. 661, 666 (BIA 2004). Torres-Valdivias argues that the BIA erred by failing to apply the categorical approach in determining whether his conviction for sexual battery triggered the heightened *Matter of Jean* standard.

We disagree. Adjustment of status under 8 U.S.C. § 1255 is a discretionary form of relief. *See, e.g.*, 8 U.S.C. § 1255(i)(2) ("[T]he Attorney General *may* adjust the status of the alien to that of an alien lawfully admitted for permanent residence . . . ." (emphasis added)). In the context of the BIA's discretionary decisions, we have noted that "it is proper [for the BIA] to look to probative evidence outside the record of conviction in inquiring as to the circumstances surrounding the commission of [a] crime in order to determine whether a favorable exercise of *discretion* is

---

[2] Torres-Valdivias also argues that he was denied due process when the BIA assigned his appeal for decision by a single member. Contrary to this argument, however, his appeal was in fact assigned to a three-member panel of the BIA, composed of BIA members Edward R. Grant, Molly Kendall-Clark, and Neil P. Miller. This argument is therefore without merit.

warranted." *Tokatly v. Ashcroft*, 371 F.3d 613, 621 (9th Cir. 2004) (second alteration in original) (quoting *Matter of Mendez-Moralez*, 21 I. & N. Dec. 296, 303 n.1 (BIA 1996)). Indeed, in *Matter of Jean* itself, the Attorney General looked at the facts underlying Jean's conviction, including those found in a medical examiner's report—and therefore outside the records of conviction—to conclude that she was a violent or dangerous individual who should not be granted the form of discretionary relief she had applied for. *See* 23 I. & N. Dec. at 375, 383.

It is not surprising that both our precedent and the Attorney General's decision in *Matter of Jean* counsel against the application of the categorical approach in this context. The categorical approach, as laid out in *Taylor v. United States*, 495 U.S. 575 (1990), requires a court to look only at the statutory definition of a prior offense of conviction and ignore any facts not found in judicially noticeable records of conviction. This approach applies where "Congress intended that [a certain statutory] provision be triggered by crimes having certain specified elements . . . ." *Id.* at 588. In the immigration context, this approach therefore generally applies in determining whether an alien is removable in the first instance or whether he is statutorily barred from various forms of relief. *See, e.g.*, *Tokatly*, 371 F.3d at 621 (noting that the categorical approach applies "in order to determine whether an alien's prior conviction constitutes a basis for removal under the INA"); *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1212 (9th Cir. 2013) (applying the categorical approach to determine whether an offense constituted a crime involving moral turpitude, which would render the alien ineligible for cancellation of removal). Contrasted with questions of statutory removability and eligibility for relief, for which Congress intended specific crimes to trigger

removal or statutory bars to relief, the question here is very different. In light of the discretionary language used in 8 U.S.C. § 1255(i), Congress plainly intended for the Attorney General (and, by extension, his delegate the BIA) to exercise his discretion in adjudicating applications for adjustment of status under any standards that the Attorney General (or the BIA itself) deems appropriate to establish.

In sum, the BIA's decision not to apply the categorical approach to guide the exercise of its discretion is consistent with our case law as well as with the Attorney General's and the BIA's precedential decisions. Accordingly, we uphold the BIA's refusal to apply the categorical approach in this case.

## B.  Violent or Dangerous Crime Determination

Torres-Valdivias next contends that the BIA committed an error of law in finding that his sexual battery offense constituted a violent or dangerous crime triggering the heightened standard of *Matter of Jean*. Although framed in an attempt to present a question of law, we conclude that this argument challenges the BIA's discretionary decision to view his crime as a violent or dangerous one. We therefore lack jurisdiction to decide the merits of this argument.

At its core, this argument relies on distinguishing, on its facts, Torres-Valdivias's crime from the crime involved in *Matter of Jean*. Whereas Torres-Valdivias accepts that manslaughter, the crime involved in *Matter of Jean*, constitutes a violent or dangerous crime, he denies that sexual battery rises to the same level. A fact-intensive determination in which the equities must be weighed in reaching a conclusion is a prototypical example of a discretionary decision. Torres-Valdivias's claim therefore "fall[s] well

within the BIA's discretionary authority and [is] not subject to our review." *Mejia v. Gonzales*, 499 F.3d 991, 999 (9th Cir. 2007) (citing 8 U.S.C. § 1252 (a)(2)(B)(i)).

### C. *Scope of* Matter of Jean

The most substantial question raised by Torres-Valdivias is whether *Matter of Jean* applies in the context of an adjustment of status application under 8 U.S.C. § 1255(i). Torres-Valdivias argues that it is not *Matter of Jean* that applies in this context, but rather *Matter of Arai*, 13 I. & N. Dec. 494 (BIA 1970). We disagree, and we uphold the BIA's decision to apply *Matter of Jean* to cases that would previously have been governed by *Matter of Arai*, provided the alien has been convicted of a violent or dangerous crime.

### 1. *Matter of Jean* and *Matter of Arai*

*Matter of Jean* involved a refugee's applications for adjustment of status under 8 U.S.C. § 1159(a) and for asylum under 8 U.S.C. § 1158. 23 I. & N. Dec. at 375–76. However, Jean was statutorily ineligible for adjustment of status due to a manslaughter conviction, which qualified as a crime involving moral turpitude rendering Jean inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I). *Id.* As a predicate to her adjustment of status application, she was therefore also applying for a waiver of inadmissibility under 8 U.S.C. § 1159(c)—the so-called § 209(c) waiver, named for the corresponding INA section. *Id.* at 376. The BIA, balancing the equities in the exercise of its discretion, granted her the waiver and adjustment of status. *Id.* at 378. The Attorney General then stepped in to reverse the BIA. *Id.* at 389. In doing so, the Attorney General articulated the applicable

standard for guiding the BIA's exercise of discretion as follows:

> It would not be a prudent exercise of the discretion afforded to me by [§ 1159(c)] to grant favorable adjustments of status to violent or dangerous individuals except in extraordinary circumstances, such as those involving national security or foreign policy considerations, or cases in which an alien clearly demonstrates that the denial of status adjustment would result in exceptional and extremely unusual hardship.

*Id.* at 383. In addition, the Attorney General applied the same standard in denying, as a matter of discretion, Jean's application for asylum under § 1158. *Id.* at 385 ("For the same reasons articulated in the earlier discussion of the respondent's application for adjustment of status, I am highly disinclined to exercise my discretion—except, again, in extraordinary circumstances, such as those involving national security or foreign policy considerations, or cases in which an alien clearly demonstrates that the denial of relief would result in exceptional and extremely unusual hardship—on behalf of dangerous or violent felons seeking asylum.").

This standard may differ from the *Matter of Arai* standard that Torres-Valdivias argues the BIA should have applied. *Matter of Arai*, unlike *Matter of Jean*, involved the same kind of application involved in this case—namely, an application for adjustment of status under 8 U.S.C. § 1255. In that context, the BIA articulated the following standard:

> Where adverse factors are present in a given application, it may be necessary for the applicant to offset these by a showing of unusual or even outstanding equities. Generally, favorable factors such as family ties, hardship, length of residence in the United States, *etc.*, will be considered as countervailing factors meriting favorable exercise of administrative discretion. In the absence of adverse factors, adjustment will ordinarily be granted, still as a matter of discretion.

*Matter of Arai*, 13 I. & N. Dec. at 496. We proceed by assuming *arguendo* that the standards articulated in these two cases are sufficiently different so as to potentially make a difference in Torres-Valdivias's case.

### 2. *Matter of Jean* and Adjustment of Status Applications

Torres-Valdivias argues that *Matter of Jean* does not apply to him because, unlike Jean, Torres-Valdivias is not an inadmissible alien and therefore remains statutorily eligible for adjustment of status under 8 U.S.C. § 1255(i). As this case comes to us, the parties agree that his conviction for sexual battery receives the benefit of the petty offense exception to inadmissibility, 8 U.S.C. § 1182(a)(2)(A)(ii)(II). As such, Torres-Valdivias remained statutorily eligible for adjustment of status without needing to apply for a waiver of inadmissibility. Torres-Valdivias thus argues that *Matter of Jean*, which established a standard in a case involving a § 209(c) waiver of inadmissibility, is inapplicable here.

We disagree. Torres-Valdivias fails to acknowledge that *Matter of Jean* applied its standard not only in deciding the § 209(c) waiver question, but also in denying asylum under § 1158 as a matter of discretion. The scope of *Matter of Jean* is therefore not as narrow as Torres-Valdivias argues, as it plainly applies beyond the context of waivers of inadmissibility. Of note, the Attorney General has promulgated the *Matter of Jean* standard in the broader context of § 212(h) waivers of inadmissibility—which, unlike § 209(c) waivers, are not limited to refugees. *See* Waiver of Criminal Grounds of Inadmissibility for Immigrants, 67 Fed. Reg. 78,675 (Dec. 26, 2002) (codified at 8 C.F.R. § 1212.7(d)).[3]

Given the broad language employed by the Attorney General in *Matter of Jean* and its focus on his discretion, we uphold the BIA's broad reading of *Matter of Jean*. In *Matter of Jean*, the Attorney General effectively overruled the BIA's practice of granting discretionary forms of relief to aliens having been convicted of violent or dangerous crimes. Whether an alien applying for relief from removal has shaken a baby to death as in *Matter of Jean* or has committed sexual battery of a ten-year-old as in this case, the Attorney General has determined that these are reprehensible aliens to whom relief should be denied in all but the most extraordinary circumstances. *Matter of Jean* by its own terms is not limited to the waiver of inadmissibility context, as it also applied its

---

[3] Torres-Valdivias's argument that the application of *Matter of Jean* reads 8 C.F.R. § 1212.7(d) into the petty offenses exception to inadmissibility, 8 U.S.C. § 1182(a)(2)(A)(ii)(II), is without merit. The BIA did not apply *Matter of Jean* to find Torres-Valdivias inadmissible notwithstanding the statutory petty offense exception; instead, it applied *Matter of Jean* to guide the exercise of its ultimate discretion as to whether to grant Torres-Valdivias adjustment of status under 8 U.S.C. § 1255(i).

standard to denying Jean's application for asylum as a matter of discretion. This broad reading of *Matter of Jean* is further supported by the BIA's published decision in *Matter of K–A–*, 23 I. & N. Dec. 661 (BIA 2004), which noted that "[t]he Attorney General has communicated in unequivocal terms that he is not inclined to exercise his discretion favorably with respect to aliens who have been convicted of dangerous or violent crimes except in the most exceptional circumstances." *Id.* at 666 (citing *Matter of Jean*, 23 I. & N. Dec. at 383).

### 3.  Change in Standard from *Matter of Arai* to *Matter of Jean*

We are somewhat concerned that the BIA in this case applied, for apparently the first time, the heightened *Matter of Jean* standard in a case that would previously have been governed by *Matter of Arai* without issuing a published decision and without acknowledging *Matter of Arai*.

Because the BIA here did not publish its decision and the outcome here is not directly controlled by *Matter of Jean* or by 8 C.F.R. § 1212.7(d), which address different INA provisions, we may not grant the BIA the *Chevron*[4] deference that we have previously held justifies 8 C.F.R. § 1212.7(d). *See Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1210 (9th Cir. 2013) ("*Chevron* deference is afforded to an unpublished decision only when it is 'directly controlled by a published decision interpreting the same statute.'") (quoting *Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010)); *Mejia v.*

---

[4] *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

*Gonzales*, 499 F.3d 991, 995–97 (9th Cir. 2007) (applying *Chevron* deference and upholding 8 C.F.R. § 1212.7(d)).

The precedent decision directly on point—that is, the precedent decision addressing the standard applicable in the § 1255 adjustment of status context—is, as Torres-Valdivias argues, *Matter of Arai*. *See Rashtabadi v. INS*, 23 F.3d 1562, 1570 (9th Cir. 1994) ("This [*Matter of Arai*] approach is employed in considering applications for adjustment of status . . . ."). "Though the agency's discretion is unfettered at the outset, if it announces and follows . . . a general policy by which its exercise of discretion will be governed, an irrational departure from that policy . . . could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion.'" *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996) (second alteration in original) (quoting 5 U.S.C. § 706(2)(A)). The arbitrary or capricious standard is rather easy for an agency to satisfy, and requires little more than a reasoned explanation.[5] "To be sure, the requirement that an agency provide reasoned explanation for its action would ordinarily demand that it display awareness that it *is* changing position. An agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

---

[5] Indeed, the Supreme Court has indicated that this standard differs little from the deference accorded under *Chevron*, which is simply an inquiry into "whether an agency interpretation is 'arbitrary or capricious in substance.'" *Judulang v. Holder*, 132 S. Ct. 476, 483 n.7 (2011) (quoting *Mayo Found. for Med. Educ. & Research v. United States*, 131 S. Ct. 704, 711 (2011)).

We conclude that the BIA's decisions in this case are sufficient to satisfy its obligation not to act in an arbitrary or capricious manner. Despite the BIA's failure to acknowledge *Matter of Arai* notwithstanding Torres-Valdivias's citations to it in his briefing to the BIA, the BIA explained why *Matter of Jean* is the controlling precedent. In addition, the BIA also adopted and affirmed the IJ's decision; in turn, the IJ acknowledged that *Matter of Jean* "substantially altered [the *Matter of Arai*] approach in cases" where a violent or dangerous offense is involved. The combination of the IJ and BIA's decisions sufficiently justifies any change in the applicable standard.

## IV.     Conclusion

We uphold the BIA's decision not to apply the categorical approach in guiding its discretion to determine whether a crime is violent or dangerous for purposes of *Matter of Jean*. The BIA's ultimate decision that a crime is in fact violent or dangerous is a discretionary decision, which this court lacks jurisdiction to review. Finally, the BIA did not err in extending the *Matter of Jean* standard to the context of adjustment of status applications under 8 U.S.C. § 1255.

In accordance with our holdings, we dismiss the petition for review for lack of jurisdiction insofar as it challenges the BIA's discretionary determination that Torres-Valdivias's sexual battery offense is a violent or dangerous crime. We further deny the petition for review insofar as it challenges the BIA's failure to apply the categorical approach and its application of the heightened *Matter of Jean* standard.

**PETITION FOR REVIEW DISMISSED in part and DENIED in part.**