[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 14-12850; 14-15825
Non-Argument Calendar

_____

Agency No. A029-348-440

WILLIAM TALAVERA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals

_____

(October 5, 2015)

Before WILLIAM PRYOR, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

William Talavera, a native and citizen of Nicaragua, petitions for review of

the denial of his application for an adjustment of status under the Nicaraguan Adjustment and Central American Relief Act of 1997, Pub. L. No. 105–100, 111 Stat. 2160 (1997), and the denial of his motion to reopen. We deny the petition.

In 1988, Talavera entered the United States without inspection. Talavera applied for an adjustment of status under the Nicaraguan Relief Act, but he abandoned the application. In 2009, the Department notified Talavera that he was removable for having entered the United States without admission or parole. *See* 8 U.S.C. § 1182(a)(6)(A)(i). The Department also charged Talavera as removable for being convicted in a Florida court of felony battery, *see* Fla. Stat. § 784.041, a crime of moral turpitude. *See* 8 U.S.C. § 1182(a)(2)(A)(i)(I). Talavera conceded removability on both charges and renewed his application to adjust his status.

During his removal hearing, Talavera testified regarding his ten arrests for offenses involving alcohol and violence and his convictions for reckless driving, driving under the influence, disorderly intoxication, and resisting a police officer. Talavera also testified that he pleaded guilty to felony battery based on his involvement in a brawl during which he and his brothers beat and kicked a man, damaging several of his teeth, and used a machete that severed a tendon in the man's hand, which required three surgeries to repair. In his written closing argument, Talavera conceded that felony battery was a "violent or dangerous crime[]" and that he could not obtain a waiver of inadmissibility in the absence of

2

evidence that his removal would result in an "exceptional and extremely unusual hardship." *See* 8 C.F.R. § 1212.7(d).

An immigration judge denied Talavera's application to adjust his status and entered an order of removal. The immigration judge found that Talavera "conceded that he ha[d] been convicted of a crime involving moral turpitude" and failed to establish that his removal would result in an exceptional and extremely unusual hardship to warrant a discretionary waiver of inadmissibility. *See id.* The immigration judge also found that Talavera did not otherwise merit relief as a matter of discretion because his favorable attributes did not outweigh his "extensive criminal history" and the "seriousness of [his] conviction for felony battery." *See* 8 U.S.C. § 1182(h).

The Board dismissed Talavera's appeal. The Board refused to "disturb" that classification of Talavera's offense because he had conceded that the offense "satisf[ied] the violent or dangerous definition," and in the alternative, the Board "independently conclude[d] that the offense so qualifies" based on the factual findings of the immigration judge. Because removal would cause Talavera, his wife, and his mother "the type of harms typically associated with deportation," the Board determined that Talavera could not "satisfy the exceptional and extremely unusual hardship standard . . . [and did] not merit a favorable exercise of discretion with respect to his waiver application."

3

Talavera filed a motion to reopen his case, which the Board denied. Talavera's arguments that his prior conviction might no longer qualify as a crime of moral turpitude due to a change in the law lacked merit, the Board ruled, because he had conceded he was inadmissible and he failed to establish how recent decisions affected his case. The Board also ruled that the evidence regarding the birth of Talavera's child, the anxiety suffered by his wife and mother while awaiting his removal, and the inferior medical and mental health services in Nicaragua failed to qualify as an exceptional and extremely unusual hardship to warrant a waiver of inadmissibility.

We lack jurisdiction to review the denial of discretionary relief, including the denial of a waiver of inadmissibility, 8 U.S.C. §§ 1182(h)(2), 1252(a)(2)(B), and we lack jurisdiction to review an order of removal based on the commission of a crime of moral turpitude, *id.* §§ 1227(a)(2)(A)(i), 1252(a)(2)(C). But we have jurisdiction to review constitutional issues or questions of law. *Id.* § 1252(a)(2)(D). "[A]bsent a cognizable excuse or exception, we [also] lack jurisdiction to consider claims that have not been raised before the [Board]." *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (internal quotation marks and citation omitted).

Two standards govern our review of Talavera's petition. We review the denial of a motion to reopen for an abuse of discretion. *Zhang v. U.S. Att'y Gen.*,

4

572 F.3d 1316, 1319 (11th Cir. 2009). "This review is limited to determining whether the [Board] exercised its discretion in an arbitrary or capricious manner." *Id.* We review *de novo* the conclusions of law by the Board. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009).

Talavera argues that the Attorney General exceeded his statutory authority by issuing regulation 1212.7(d) because it imposed a heightened hardship standard to be eligible for an adjustment of status, but this argument fails. Regulation 1212.7(d) did not affect Talavera's statutory eligibility for a discretionary waiver. *See* 8 U.S.C. § 1182(h). "[T]he Attorney General, in his discretion, and pursuant to such terms, conditions and procedures as he may by regulations prescribe, [can] consent[] to . . . [an] adjustment of status," *id.* § 1182(h)(2), and could issue regulation 1212.7(d) to provide guidance about how to weigh an alien's criminal offense against any hardships caused by his removal. Consistent with the regulation, the Board balanced the seriousness of Talavera's misconduct with the resulting hardships to determine whether he merited a waiver of inadmissibility.

Talavera also argues that the Board endorsed the use of an elements-based test to classify his prior conviction as a violent and dangerous felony and engaged in impermissible fact-finding regarding the crime, but Talavarez misinterprets the decision of the Board. The Board approved of "the immigration judge's decision to treat the conviction in [a] manner" consistent with Talavera's admission that his

5

prior conviction qualified as a violent or dangerous felony. And the Board relied the "factual findings [of the immigration judge] regarding the incident . . . to independently conclude that [Talavera's] offense so qualifie[d]."

The Board did not abuse its discretion when it denied Talavera's motion to reopen. We cannot classify as arbitrary and capricious the finding that the hardships faced by Talavera's family were not exceptional and extremely unusual when the Board gave reasoned consideration to Talavera's new evidence. *See Zhang*, 572 F.3d at 1319. Talavera argues that the Board required that a health issue be "permanent" to satisfy the hardship standard, but the Board considered the permanence of Talavera's wife's and mother's impairments to determine whether they could obtain adequate medical care in Nicaragua. Talavera also argues that the "Board erred by holding [him] to the . . . concession by his trial counsel that his conviction for felony battery constitutes a crime involving moral turpitude," but Talavera failed to exhaust this argument before the Board. *See Amaya-Artunduaga*, 463 F.3d at 1250. Even if we were to assume that Talavera could establish grounds for allowing him to withdraw his concession, he fails to argue that the Board abused its discretion by refusing to reopen his case on that basis.

We **DENY** Talavera's petition.