In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 15-3238

JOSÉ ANTONIO CISNEROS,

*Petitioner,*

*v.*

LORETTA E. LYNCH, Attorney General of the United States,

*Respondent.*

---

Petition for Review of an Order of the
Board of Immigration Appeals
No. A073-393-696

---

ARGUED MAY 26, 2016 — DECIDED AUGUST 25, 2016

---

Before WOOD, *Chief Judge*, and MANION and HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. José Antonio Cisneros, who had been a lawful permanent resident of the United States since 1996, had the bad judgment to commit unarmed robbery in 2012. This is an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii), and so one result of his conviction was the loss of his legal permanent resident status. His conviction also

made him inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I)—
that is, unable to adjust his status back to that of a lawful per-
manent resident—because robbery is a crime of moral turpi-
tude. In order to regain eligibility for relief from removal
through adjustment of status, Cisneros needed to deal with
the problem of his inadmissibility. He therefore applied for a
waiver of inadmissibility under section 212(h) of the Immi-
gration and Nationality Act (INA), 8 U.S.C. § 1182(h)(1)(B),
which gives the Attorney General the discretionary power to
waive inadmissibility based on several grounds, including a
crime of moral turpitude, if the person is a spouse, parent, or
child of a U.S. citizen who would suffer "extreme hardship"
if removed.

The Attorney General has promulgated regulations imple-
menting this authority. The regulations state that with respect
to inadmissibility based on "violent or dangerous crimes,"
she "in general, will not favorably exercise discretion under
section 212(h)(2) of the Act … to consent to an application or
reapplication for a visa, or admission to the United States, or
adjustment of status, with respect to immigrant aliens who
are inadmissible under section 212(a)(2) of the Act in cases in-
volving violent or dangerous crimes, except in extraordinary
circumstances." 8 C.F.R. § 1212.7(d). The regulation identifies,
as one example of such extraordinary circumstances, "cases
in which an alien clearly demonstrates that the denial of the
application for adjustment of status or an immigrant visa or
admission as an immigrant would result in exceptional and
extremely unusual hardship." *Id.*

An immigration judge granted Cisneros's application for
a waiver and adjustment of status, finding that his U.S.-citizen
family would suffer "exceptional and extremely unusual

hardship" as a result of his removal. The Department of Homeland Security appealed, and the Board of Immigration Appeals ("the Board") overturned that decision and revoked the waiver. Cisneros now petitions for review from the Board's decision. Our authority, however, extends only to legal or constitutional issues, not discretionary determinations. Finding no cognizable error, we deny the petition for review.

**I**

Cisneros came to the United States in 1988 at age 17 and stayed after the expiration of his visa. In 1995, he married U.S. citizen Melissa Cisneros, and in 1996 his status was adjusted to lawful permanent resident. They were divorced in 2002, but remained on good terms. Cisneros's oldest child, Maria Esmeralda, was 24 years old at the time of the removal proceeding; Marissa, his first child with Melissa, was 17 years old; and Marsea, their second daughter, was 15. Cisneros also has two stepsons from Melissa's previous marriage. Maria had three children of her own, only two of whom are now living. According to the testimony, Cisneros consistently supported the children financially and supported Melissa after their divorce.

On a darker note, Cisneros has a history of alcoholism and a criminal record that includes robbery, battery, a 1998 DUI, and assorted convictions for driving without a license. He has enrolled in rehabilitation programs several times, most recently in 2008. The immigration judge described his testimony about the 2012 conviction:

> [H]e was depressed, his car was broken, so he went on a bicycle and tried to look for a used car, something that was inexpensive that maybe

> his family can lend him some money, or some
> friends, in order to buy a new vehicle. As he was
> riding his bicycle, he passed by a bank that he
> had not entered before and told the teller to give
> him all her money. She gave him all the money.
> He then walked out of the bank and rode back
> to his home.

The probable-cause affidavit for Cisneros's arrest adds that his demand for money was on a written note that he handed the teller that read, "Give me all the money." Cisneros represents that he got just $75.

The immigration judge heard testimony from Cisneros and Melissa. Maria was unable to appear at the proceeding, for the grim reason that her boyfriend at the time had beaten her three-year-old daughter Anabel, Cisneros's granddaughter, to death on December 23, 2014, and Maria herself was in jail on felony neglect charges. The judge described Cisneros's history with alcoholism and his attempts to get better, as well as his close relationships with his children, stepchildren, grandchildren, and ex-wife. She went through the details of his prior convictions. She examined the circumstances that led up to the 2012 robbery. She noted his current sobriety and church attendance. She concluded, given his earning potential, the recent family tragedy, and the fact that all of the U.S. citizen family members would remain in the United States even if Cisneros was removed, that the "profound and far reaching" "economic and emotional hardship" that would result from his removal warranted an exercise of discretion in his favor. Cisneros's removal, the immigration judge concluded, "would result in exceptional and extremely unusual

hardship to his qualifying relatives, particularly his young children."

The Board disagreed. It held that 8 C.F.R. § 1212.7(d) applies to Cisneros's conviction because, despite the absence of any weapon or harm caused to anyone, "the potential for a physical altercation in committing" robbery renders it a dangerous crime. The Board found that Cisneros's younger daughters—the oldest, Maria, was not a child within the meaning of the Act and therefore not a qualifying family member—would "suffer the emotional and financial hardship of separation from their father," but it would not be exceptional or extremely unusual. The children would soon be old enough to visit him on their own, the Board added. The Board also explained that hardship is only one factor, and even if Cisneros demonstrated exceptional and extremely unusual hardship to his qualifying relatives, his "negative factors … far outweigh the positive."

## II

Unless a constitutional claim or question of law is present, we have no authority to review either the Attorney General's discretionary grant or denial of a section 212(h) waiver, 8 U.S.C. § 1182(h)(2), or a final order finding a person removable because of the commission of an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii). *Vaca-Tellez v. Mukasey*, 540 F.3d 665, 668 (7th Cir. 2008).

Our review of the Board's constitutional and legal determinations is *de novo*. *Surganova v. Holder*, 612 F.3d 901, 903 (7th Cir. 2010). We give deference to the Board's interpretation of immigration statutes. *Cano-Oyarzabal v. Holder*, 774 F.3d 914, 916 (7th Cir. 2014) (citing *Chevron U.S.A. Inc. v. Nat. Res. Def.*

*Council, Inc.*, 467 U.S. 837 (1984)). If a statute is unambiguous, we implement its plain meaning. If it is unclear, we defer to the Board's interpretation so long as its interpretation is reasonable. *Hamlin v. Holder*, 755 F.3d 506, 511 (7th Cir. 2014).

Cisneros's petition for review presents four arguments: (1) that section 1212.7(d) is an invalid regulation in conflict with congressional intent and the relevant statute, (2) that even if the regulation is valid, the Board applied it improperly, (3) that his crime was not violent or dangerous, and (4) that the Board committed legal error by failing to consider certain material facts in its hardship analysis.

## A

We begin with his argument about the validity of the regulation. He contends that it impermissibly narrows the statutory language. Section 212(h)(1)(B) allows the Attorney General to waive inadmissibility if removal would result in "extreme hardship" to a citizen or lawful resident spouse, parent, or child. Yet the regulation, section 1212.7(d), significantly narrows the scope for discretion with respect to violent or dangerous crimes. We must decide whether the regulation has permissibly cabined the executive branch's own authority, or if instead it is an impermissible refusal to exercise the discretion that Congress has required the executive to exercise. We note that Cisneros has not waived this argument by failing to ask the Board to set aside the Attorney General's regulation. Such an action would lie beyond the Board's power. See *Matter of Anselmo*, 20 I. & N. Dec. 25, 30 (BIA 1989) ("Neither this Board nor an immigration judge has authority to consider a challenge to the Attorney General's determination[.]"). He thus had no duty to present this argument to the Board. *Isaaq v. Holder*, 617 F.3d 962, 968 (7th Cir. 2010).

Section 212(h)(1)(B), 8 U.S.C. § 1182(h)(1)(B), sets out the "extreme hardship" waiver. Section 212(h)(2) states that once the terms of 212(h)(1)(A) or (B) or (C) are met and the Attorney General has, using the "discretion … pursuant to such terms, conditions and procedures as he may by regulations prescribe," consented to the petitioner's application, waiver can occur. The Attorney General argues that section 1212.7(d) is just that: a "term," "procedure," or "condition" prescribed by regulation in order to implement the authority granted by the statute. Congress expressly left it up to the Attorney General to promulgate regulations to guide the discretion granted in the statute, and she has done so. *Chevron*, 467 U.S. at 843–44 ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation."). Cisneros responds that there is no gap to fill—rather, section 1212.7(d)'s "exceptional and extremely unusual hardship" language conflicts with and replaces section 1182(h)(2), and therefore is invalid.

The Attorney General has the better of this debate. The plain language of the statute grants the Attorney General discretion over inadmissibility waivers and the authority to regulate that discretion. She has chosen to decline, as a matter of policy, to exercise her discretion in favor of a petitioner who has committed a "violent or dangerous" crime, unless that person can demonstrate a hardship even greater than that which those who commit non-violent, non-dangerous crimes must show. Granting Cisneros's point that "extreme hardship" is a lower threshold than "exceptional and extremely unusual hardship," the fact remains that the statute permits the Attorney General to fine-tune her discretion in this way. Indeed, in *Lopez v. Davis*, 531 U.S. 230 (2001), the Supreme

Court came to much the same conclusion with respect to a regulation promulgated by the Bureau of Prisons on the subject of early release. The statute there denied early release to inmates convicted of violent offenses, but the regulation added an additional category of ineligible inmates—those whose current offense is a felony involving a firearm. *Id.* at 238. The statute merely described eligibility for early release, not an entitlement to it, and so the Bureau was within its rights to identify another group for whom release was inappropriate. The Attorney General's regulation in our case does the same thing, and so the same result should follow.

The regulation in our case does not render it impossible for persons who have committed violent or dangerous crimes to obtain relief. It just imposes a higher bar. We are not sure, nor could the government enlighten us, about how many people might fail the stricter regulatory test yet qualify for the more lenient statutory test. In the end, however, this does not matter. This is a regulation formally promulgated through statutory authority, and so it qualifies for *Chevron* deference. In accordance with *Chevron*'s two-part test, we first ask whether Congress "directly spoke[] to the precise question at issue," and if not, we ask whether the Attorney General's construction of the statute is permissible. *Yi Di Wang v. Holder*, 759 F.3d 670, 673 (7th Cir. 2014) (quoting *Chevron*, 467 U.S. at 842–43 & n.9).

Congress spoke directly to the question how a petitioner can show he is eligible for a discretionary inadmissibility waiver: by demonstrating extreme hardship to a qualifying family member. 8 U.S.C. § 1182(h)(1)(B). Just as in *Lopez*, Congress did not constrain the Attorney General's authority to draw lines within the set of people identified by the statute.

Cisneros quibbles about the source of the "exceptional and extremely unusual" phrase, which comes from a case involving a refugee waiver, not a section 1182(h) waiver. *In re Jean*, 23 I. & N. Dec. 373 (U.S. Att'y Gen. 2002), but we see no significance in the source of the language the Attorney General chose to adopt. We approved of the heightened *In re Jean* standard for refugee waivers in *Ali v. Achim*, 468 F.3d 462 (7th Cir. 2006), finding that it did not conflict with section 1159(c) because section 1159(c) does not require, but only allows, waiver in the listed circumstances. Nothing in section 212(h) compels a different result.

This regulation differs from the one at issue in *Succar v. Ashcroft*, 394 F.3d 8 (1st Cir. 2005), where the First Circuit found invalid a rule categorically barring people on parole from inadmissibility waivers. The First Circuit noted that "[t]he Supreme Court itself has ruled that the two questions of discretion as to the ultimate relief and discretion as to eligibility exclusions are distinct." *Id*. at 23 (citing *INS v. Cardoza-Fonseca*, 480 U.S. 421, 433–34 (1987)). Even if no petitioner who meets "extreme hardship" but not "exceptional and extremely unusual hardship" is ever granted a waiver under section 1212.7(d), the regulation is nonetheless not a categorical bar of the kind in *Succar*. It does not render people convicted of violent or dangerous crimes ineligible; it raises the threshold for obtaining the ultimate relief.

Our conclusion is in accord with five of our sister circuits. See *Perez Pimentel v. Mukasey*, 530 F.3d 321, 325 (5th Cir. 2008) ("Congress has not spoken to the standards the Attorney General may employ under § 1182(h)(2), and the regulation is directed only to the Attorney General's discretion under that subsection"); *Samuels v. Chertoff*, 550 F.3d 252, 257 (2d Cir.

2008) ("Because proof of 'extreme hardship' constitutes only a threshold showing, Section 1212.7(d) is not inconsistent with Section 212(h)"); *Mejia v. Gonzales*, 499 F.3d 991, 996 (9th Cir. 2007) ("The Attorney General has not changed or altered the statutory 'extreme hardship' standard. Instead, he has promulgated a regulation to guide [immigration judges] in the way they exercise their relatively unfettered grant of discretion after the statutory requirements are met."); *Talavera v. U.S. Att'y Gen.*, 628 F. App'x 997, 999 (11th Cir. 2015) (nonprecedential holding that the Attorney General was empowered to "issue regulation 1212.7(d) to provide guidance about how to weigh an alien's criminal offense against any hardships caused by his removal"); *Idowu v. U.S. Att'y Gen.*, 512 F. App'x 222, 226 (3d Cir. 2013) (nonprecedential, citing *Samuels* and *Mejia*). We see no reason to create a conflict with them.

B

Cisneros next urges that even if the regulation is valid, the Board improperly applied it in his case. He points to the following sentence from the Board's decision: "the respondent has not demonstrated the kind of extraordinary circumstances that would render him eligible for a waiver under 212(h) of the Act." Therefore, he claims, the agency decision does not warrant deference because it did not focus on the right question. See *Mata-Guerrero v. Holder*, 627 F.3d 256, 259 (7th Cir. 2010) ("*Chevron* deference … assumes that an agency has taken a careful look at the general legal issue and has adopted a reasonably consistent approach to it.").

The government responds that Cisneros takes the sentence out of context. The full sentence reads: "As the respondent has not demonstrated the kind of extraordinary circumstances that would render him eligible for a waiver under 212(h) of

the Act in light of his conviction, he does not merit a favorable discretionary determination." The Board's decision continues by noting that "the hardship presented is but one factor to consider in making a discretionary determination," and concludes that "the respondent does not merit the relief he seeks in the exercise of discretion … Although the respondent has several notable equities, the negative factors in his case far outweigh the positive."

The Board's decision shows that it followed the regulation and asked whether, given Cisneros's eligibility for relief, a favorable exercise of discretion was merited. Finding no "exceptional and extremely unusual" hardship, it said no. The Board did not consider Cisneros "ineligible" because of his violent or dangerous crime and did not commit any error in applying section 1212.7(d).

C

Cisneros next argues that his crime should not have been classified as "violent or dangerous." If this was wrong, then it would have been error to apply section 1212.7(d) to him. His argument is that the Board improperly applied a categorical approach to determine that his crime fell in that category; it should instead have analyzed the facts and circumstances underlying his robbery conviction. See *Taylor v. United States*, 495 U.S. 575 (1990) (establishing a categorical approach to classify state crimes); *Shepard v. United States*, 544 U.S. 13 (2005) (clarifying the modified categorical approach); see also *Descamps v. United* States, 133 S. Ct. 2276 (2013) (describing modified categorical approach).

The categorical approach is a method often used to determine whether a prior conviction should be used, usually for

purposes of sentencing enhancement. Critically, the court looks only at the elements of the crime, not at the particular way in which it was committed. Section 1212.7(d) does not explicitly state whether a facts-and-circumstances approach or a categorical approach (or a modified categorical approach) is appropriate for determining whether a crime is "violent or dangerous" for purposes of the regulation. Cisneros draws support for his argument that a facts-and-circumstances approach is required from *In re Jean*, where the Attorney General described the crime in some detail. 23 I. & N. Dec. at 383. But in the end, the Attorney General there concluded that it made no difference whether the crime was a violent one, because the applicant was unfit in any event for discretionary relief. *Id*.

Neither does our decision in *Ali* clarify whether the categorical approach is required. 468 F.3d 462. *Ali* did not address the appropriate way for immigration judges and the Board to determine whether a crime was "violent or dangerous." Cisneros claims that we rejected the categorical approach in that case, but he conflates our rejection of a categorical bar on certain petitioners with a categorical approach to analyzing the crime of conviction.

The Ninth Circuit requires the Board to "mak[e] a determination based on the facts underlying [the] conviction that [the] crime was violent or dangerous" before applying the heightened regulatory standard. See *Rivas-Gomez v. Gonzales*, 225 F. App'x 680, 683 (9th Cir. 2007) (nonprecedential); *cf. Torres-Valdivias v. Lynch*, 786 F.3d 1147, 1152 (9th Cir. 2015) (finding the Board had discretion not to apply a categorical approach in determining whether a crime was "violent or

dangerous"). The Eleventh Circuit has stated that "*Jean* required neither a 'categorical' nor a 'fact-based' approach to determining whether a refugee's conviction renders him a 'violent or dangerous individual,'" but rather only "an adequate consideration of the nature of the refugee's crime." *Makir-Marwil v. U.S. Att'y Gen.*, 681 F.3d 1227, 1235 (11th Cir. 2012). The Eleventh Circuit seems to favor an elements approach for very serious crimes and a facts-and-circumstances approach for others. *Id*. The Board has suggested, in dictum, that a "facts" approach might be preferable to a categorical one for "violent or dangerous" crime determinations. See *Matter of Dominguez-Rodriguez*, 26 I. & N. Dec. 408, 413 n.9 (BIA 2014).

We see nothing in the statute that compels the Attorney General to adopt one or the other of these methodologies. Because she created the regulation to guide her own discretion, she retains the authority to decide how to interpret the term "violent or dangerous" crime, as long as the interpretation is permissible under the INA. *Chevron*, 467 U.S. at 843; see also *Makir-Marwil*, 681 F.3d at 1235 ("all *Jean* requires is an adequate consideration of the nature of the refugee's crime").

We need not pursue this argument further, because the Board does not seem to have applied a strict categorical approach here. It noted that Cisneros's crime "did not involve a weapon and did not cause harm to any individual," but it concluded that "the potential for a physical altercation in committing such a crime is itself sufficient to determine it is a dangerous crime." The Board thus did consider Cisneros's specific acts and found that the crime met the regulation based on those acts. It did not end its analysis simply by pointing to robbery as the crime of conviction. Given that the Attorney General created the category of crime at issue here, and given

her broad discretion, we cannot say that the Board's determination that Cisneros's crime was "violent or dangerous" was impermissible.

## D

Last, Cisneros argues that the Board erred by failing to consider certain material facts in its hardship analysis. He takes issue with the fact that the Board did not mention his infant granddaughter's recent traumatic and horrific death, nor the fact that his ex-wife testified that she might be homeless without his financial support. But the Board is not required to recite every fact that Cisneros raised as evidence of extreme hardship to his family. While Cisneros tries to characterize the issue as a legal error, it is really a challenge to the Board's exercise of discretion and thus one that we are not permitted to review. See *Papazoglou v. Holder*, 725 F.3d 790, 794 (7th Cir. 2013) (because the Board applied the correct legal standards, the petitioner's argument "ultimately constitute[d] a disagreement with the Board's exercise of discretion in refusing to grant the waiver."). While the "wholesale failure to consider evidence" would be an error of law, see *Iglesias v. Mukasey*, 540 F.3d 528, 531 (7th Cir. 2008) (citation and quotation marks omitted), the Board did not ignore "wholesale" Cisneros's evidence of hardship.

## III

Because the Board made no legal error in reversing the immigration judge's grant of relief from removal, we DENY the petition for review.