# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-60087

United States Court of Appeals
Fifth Circuit

**FILED**

November 22, 2017

Lyle W. Cayce
Clerk

ROGELIO MORIN VELAQUEZ,

     Petitioner

v.

JEFFERSON B. SESSIONS, III, U. S. ATTORNEY GENERAL,

     Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A089 369 370

Before BARKSDALE, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:*

     Rogelio Morin Velaquez, a native and citizen of Mexico, seeks review of a Board of Immigration Appeals (BIA) order denying his request for a discretionary waiver of inadmissibility under § 212(h) of the Immigration and Nationality Act (INA).  Finding no error, we DENY the petition for review in part and DISMISS in part.

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-60087

I

Morin became a lawful permanent resident in 2007. In 2012, he was convicted of manslaughter in Texas. His conviction arose from a 2010 car accident in which Morin's friend was killed; although he was initially charged with manslaughter that involved an element of driving while intoxicated, Morin pleaded guilty to simple manslaughter and was sentenced to eight years of probation. In January 2014, the Department of Homeland Security (DHS) issued Morin a Notice to Appear (NTA), charging him as deportable under INA § 237(a)(2)(A)(i), which provides that "[a]ny alien who (I) is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable." In March 2014, Morin, appearing with counsel before an Immigration Judge (IJ), admitted the allegations in the NTA, and conceded the charge of removability. Morin subsequently submitted an application to readjust his status under INA § 245, based on a visa petition filed by his wife, and sought a waiver of inadmissibility pursuant to INA § 212(h). The IJ ultimately denied the application.

The IJ agreed with DHS that Morin was convicted of a violent or dangerous crime and therefore subjected to a heightened hardship standard under 8 C.F.R. § 1212.7(d). The IJ explained:

> [Morin] was convicted of manslaughter under the Texas Penal Code . . . . [Morin's] statute of conviction necessarily involves "recklessly caus[ing] the death of an individual." T.P.C. § 19.04. A crime that necessarily involves causing the death of an individual is inherently a violent or dangerous crime. Accordingly, the "exceptional and extremely unusual hardship" standard applies to [Morin's] case.

Applying that standard, the IJ concluded that "[Morin's] own asserted hardship combined with the asserted hardship of his family is not enough to establish exceptional and extremely unusual hardship." The IJ therefore

2

No. 16-60087

found Morin statutorily ineligible for a waiver of inadmissibility under INA § 212(h) and denied his application.

Morin appealed to the BIA, which ultimately dismissed his appeal in a non-precedential decision. The BIA first agreed with the IJ that Morin had been convicted of a violent or dangerous crime. The BIA next held that there was no error in the IJ's determination that Morin failed to establish that the denial of his application for adjustment of status would result in exceptional and extremely unusual hardship, as required by 8 C.F.R. § 1212.7(d). It concluded:

> While we recognize that the respondent and his children, wife and parents will suffer some hardship, the evidence of record is insufficient to establish that they would suffer hardship that is "substantially beyond that which would ordinarily be expected" from the removal of an alien with close family members here.

(quoting *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 59 (BIA 2001)). Finding that Morin had failed to establish an "extraordinary circumstance" warranting a favorable exercise of discretion, the BIA dismissed his appeal. Morin now petitions for review of that dismissal.

## II

On petition for review of an order of the BIA, we examine "the BIA's decision and only consider the IJ's decision to the extent that it influenced the BIA." *Shaikh v. Holder*, 588 F.3d 861, 863 (5th Cir. 2009). Here, because the BIA "agreed" with the IJ's analysis and conclusions, this court reviews both decisions. *Id.*; *see also Ahmed v. Gonzales*, 447 F.3d 433, 437 (5th Cir. 2006) ("When . . . the BIA affirms the [IJ's decision] and relies on the reasons set forth in the [IJ]'s decision, this court reviews the decision of the [IJ] as well as the decision of the BIA.").

We review such questions de novo. *Iruegas-Valdez v. Yates*, 846 F.3d 806, 810 (5th Cir. 2017). We review the legal reasoning of non-precedential

3

No. 16-60087

BIA decisions under the standard announced in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944): "the weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Rodriguez-Avalos v. Holder*, 788 F.3d 444, 449, n.8 & n.9 (5th Cir. 2015) (quoting *Skidmore*, 323 U.S. at 140).

Under 8 U.S.C. § 1252(a)(2)(B)(ii), this court lacks jurisdiction to review orders of removal that are discretionary decisions of the Attorney General or Secretary of Homeland Security. Judicial review is not precluded to the extent that the petition for review raises constitutional claims or questions of law. *See* § 1252(a)(2)(D); *Garcia-Maldonado v. Gonzales*, 491 F.3d 284, 287 (5th Cir. 2007). However, a petitioner may not secure jurisdiction by simply framing as a legal issue his challenge to the BIA's evaluation of the evidence in order to cloak his request for review of a discretionary decision. *See Falek v. Gonzales*, 475 F.3d 285, 289 n.2 (5th Cir. 2007).

III

Morin agues (1) that the BIA and IJ exceeded the scope of their statutory authority under INA § 212(h) by erroneously applying 8 C.F.R. § 1212.7(d) in a categorical manner, thereby rendering that application ultra vires; (2) that the BIA erred as a matter of law in determining that his manslaughter conviction constituted a violent or dangerous crime under 8 C.F.R. § 1212.7(d) because the facts of the offense did not involve an intent to harm; and (3) that the BIA improperly applied the regulation by failing to consider whether Morin's positive equities constituted "extraordinary circumstances."

A

In the context of discretionary relief under a heightened standard akin to 8 C.F.R. § 1212.7(d), an ultra vires challenge constitutes a question of law.

*Jean v. Gonzales*, 452 F.3d 392, 395–96 (5th Cir. 2006); *see also Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003) (stating that an ultra vires claim is "purely one of statutory construction"). We therefore have jurisdiction to consider Morin's ultra vires claim.

If an act of a federal agency "did not exceed the authority given to it by Congress," the act is not ultra vires. *United States v. Underwood*, 61 F.3d 306, 311 (5th Cir. 1995). INA § 212(h)(1) provides that the Attorney General may, in his discretion, waive the application of § 212(a)(2)(A)(i)(I), which renders inadmissible any alien convicted of a crime involving moral turpitude,

> in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien[.]

8 U.S.C. § 1182(h)(1)(B). Section 212(h)(2) adds an additional requirement: that "the Attorney General, in his discretion, and pursuant to such terms, conditions and procedures as he may by regulations prescribe, has consented to the alien's applying or reapplying for . . . adjustment of status." 8 U.S.C. § 1182(h)(2). The regulation at 8 C.F.R. § 1212.7(d) "sets forth a general rule for when the Attorney General will exercise his discretion pursuant to his authority under section 212(h)(2)." Waiver of Criminal Grounds of Inadmissibility for Immigrants, Interim Final Rule, 67 FR 78675–01, at 78677 (Dec. 26, 2002). This regulation provides, in relevant part:

> The Attorney General, in general, will not favorably exercise discretion under section 212(h)(2) of the Act (8 U.S.C. 1182(h)(2)) to consent to an application or reapplication for . . . adjustment of status, with respect to immigrant aliens who are inadmissible under section 212(a)(2) of the Act in cases involving violent or dangerous crimes, except in . . . cases in which an alien clearly demonstrates that the denial of the application for adjustment of

status . . . would result in exceptional and extremely unusual hardship. Moreover, depending on the gravity of the alien's underlying criminal offense, a showing of extraordinary circumstances might still be insufficient to warrant a favorable exercise of discretion under section 212(h)(2) of the Act.

8 C.F.R. § 1212.7(d).

In *Perez Pimentel v. Mukasey*, 530 F.3d 321 (5th Cir. 2008), we upheld 8 C.F.R. § 1212.7(d)[1] against an ultra vires challenge. In that case, the BIA denied the petitioner's application for a § 212 waiver on the grounds that his prior burglary conviction was a "violent or dangerous crime," such that 8 C.F.R. § 1212.7(d) applied, and he had failed to demonstrate that his two U.S. citizen children would suffer "exceptional and extremely unusual hardship" if the waiver were denied. *Id.* at 324. On petition for review, the petitioner argued that the promulgation of 8 C.F.R § 1212.7(d) was an ultra vires amendment of INA § 212. *Id.* Specifically, he asserted that "heightening the requirement from 'extreme hardship' to 'exceptional and extremely unusual hardship' with respect to a waiver of inadmissibility for violent crimes constituted an ultra vires act," arguing that "Congress . . . clearly specified that the proper standard is 'extreme hardship.'" *Id.* at 324–25.

Rejecting the petitioner's argument, we observed that the "extreme hardship" requirement is limited to INA § 212(h)(1), while "[b]y its own terms, the regulation at § [1]212.7(d) is directed at [INA § 212](h)(2)." *Id.* at 325. Applying the two-part inquiry set forth in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984), we concluded that because "Congress has not spoken to the standards the Attorney General may employ under [INA § 212](h)(2), and the regulation is directed only to the Attorney

---

[1] 8 C.F.R. § 1212.7(d) governs the Executive Office for Immigration Review at the Department of Justice. The petitioner in *Perez Pimentel* was technically challenging 8 C.F.R. § 212.7(d), which is the identical regulation governing the Department of Homeland Security. To reduce confusion, we refer to both as "8 C.F.R. § 1212.7(d)".

General's discretion under that subsection," the only remaining question was "whether the regulation is 'based on a permissible construction of the statute.'" *Perez Pimentel*, 530 F.3d at 325. We answered this question in the affirmative. *Id.* at 326.

Morin asserts that, by specifying that the regulation is directed at INA § 212(h)(2) and not § 212(h)(1)(b), *Perez Pimentel* held that "if § 1212.7(d) is not a *substitute* for the extreme hardship but rather a *subsequent assessment*, it is permissible." Thus, he argues, if the IJ and BIA begin to treat 8 C.F.R. § 1212.7(d) as a substitute statutory prerequisite, then the regulation will have expanded its reach beyond the Attorney General's use of his permitted discretion. Morin's interpretation of *Perez Pimentel* is not sound. Our observation in *Perez Pimentel* that 8 C.F.R. § 1212.7(d) was directed at the Attorney General's discretion under INA § 212(h)(2) rather than § 212(h)(1)(b) was related to our analysis under *Chevron*; it did not produce a substantive rule. *Perez Pimentel* does not require the BIA to perform a two-step analysis; rather, it expressly upholds the "heightened standard" set forth in the regulations. *Id.*

Morin further argues, apparently relying on our opinion in *Jean*, that "to the extent that the [BIA] 1) utilizes § 1212.7(d) as a categorical bar; 2) does not employ any factual assessment; 3) adds a class of aliens ineligible for 212(h) waiver; and 4) does not weigh the balance of the dangerousness of the crime committed as a factor with other family, humanitarian and public interest concerns," the BIA has acted ultra vires. None of these arguments has merit.

First, neither the BIA nor the IJ used 8 C.F.R. § 1212.7(d) as a "categorical bar." In *Jean*, the petitioner argued that the BIA's decision not to waive her removal under INA § 209(c) was ultra vires because the Attorney General applied a heightened standard that was not articulated by the statute. 452 F.3d at 396. Section 209(c) allows the Attorney General to adjust the

status of a refugee by waiving the criminal grounds of inadmissibility "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest." 8 U.S.C. § 1159(c). In the petitioner's case, the Attorney General directed the BIA and IJ to consider the "nature of the criminal offense that rendered an alien inadmissible in the first place" and balance the "claims of hardship to the . . . family against the gravity of [the] criminal offense." *Jean*, 452 F.3d at 396 (quoting *In re Jean*, 23 I. & N. Dec. 373, 383 (BIA 2002)). Concluding that the Attorney General acted lawfully in adopting the heightened standard, we observed that "he did not impose the heightened extreme hardship standard on all aliens with aggravated felony convictions but only on those who engage in violent criminal acts." *Id.* at 397 (internal quotation marks and citation omitted). Thus, the determination was "fact-based, not categorical." *Id.* (quoting *Rivas-Gomez v. Gonzales*, 441 F.3d 1072, 1079 (9th Cir. 2006)). Significantly, we noted approvingly that "the BIA has limited [the] heightened waiver requirement to 'dangerous or violent crimes' in a subsequent decision." *Id.* Because the heightened standard at issue here applies only "to immigrant aliens who are inadmissible under section 212(a)(2) of the Act in cases involving violent or dangerous crimes," 8 C.F.R. § 1212.7(d), under the *Jean* court's reasoning it is "fact-based, not categorical." *See Jean*, 452 F.3d at 397.

Morin's next argument fails for the same reason. Under *Jean*, the only "factual assessment" required is the determination of whether a refugee applicant engaged in violent criminal acts. *See id.* After *Jean*, the BIA modified its analysis to focus on whether applicants "have been convicted of dangerous or violent crimes." *In re K-A-*, 23 I. & N. Dec. 661, 666 (BIA 2004). Despite the BIA's use of the word "necessarily" in its decision in Morin's case, the BIA and the IJ engaged in the required assessment when they determined

that Morin's manslaughter conviction was a conviction for a violent or dangerous crime.

Morin's remaining arguments are factually inaccurate. The BIA's decision did not make "a whole class of aliens, those with convictions for manslaughter, ineligible for 212(h) waiver." As an initial matter, neither the BIA nor the IJ indicated that its ruling would apply to every manslaughter conviction. More importantly, the Attorney General retains the discretion to grant a § 212(h) waiver to an applicant who has been convicted of manslaughter if the applicant can demonstrate "exceptional and extremely unusual hardship." *See* 8 C.F.R. § 1212.7(d). And the BIA weighed the dangerousness of the crime committed against other interests when it conducted the hardship inquiry.

Because we held 8 C.F.R. § 1212.7(d) to be facially valid in *Perez Pimentel*, and because Morin has failed to demonstrate that the BIA or the IJ acted ultra vires in applying the regulation, we DENY Morin's petition as to this claim.

B

Morin next argues that the district court erred in determining that his crime of conviction was a "violent or dangerous crime" because 8 C.F.R. § 1212.7(d) requires that the crime, as committed, involved the intent to harm. Because his argument concerns the legal standard used by the BIA and the IJ in their analyses, it raises a legal question over which we have jurisdiction. *See* 8 U.S.C. § 1252(a)(2)(D).

The plain language of 8 C.F.R. § 1212.7(d) states that the heightened standard of showing "exceptional and extremely unusual hardship" applies to aliens seeking a waiver of inadmissibility who have been involved in "violent or dangerous crimes." Yet it is not clear whether the regulation requires the BIA to look at the statute of conviction or at the applicant's underlying conduct.

No. 16-60087

The Eleventh Circuit has stated that *Jean* required neither a "fact-based" nor a "categorical" approach, but rather "an adequate consideration of the nature of the [] crime." *Makir-Marwil v. U.S. Att'y Gen.*, 681 F.3d 1227, 1235 (11th Cir. 2012). In *Waldron v. Holder*, 688 F.3d 354, 359 (8th Cir. 2012), the Eighth Circuit noted with approval that the BIA looked both at the elements of the crime and the petitioner's conduct. And in *Cisneros v. Lynch*, 834 F.3d 857, 865 (7th Cir. 2016), the Seventh Circuit observed:

> We see nothing in the statute that compels the Attorney General to adopt one or the other of these methodologies. Because she created the regulation to guide her own discretion, she retains the authority to decide how to interpret the term "violent or dangerous" crime, as long as the interpretation is permissible under the INA.

(citing *Chevron*, 467 U.S. at 843; and *Makir–Marwil*, 681 F.3d at 1235).

The regulation also does not clearly define "violent" or "dangerous" crimes. However, the Administrative Appeals Office has explained:

> [T]he statutory terms "violent or dangerous crimes" and "crime of violence" are not synonymous and the determination that a crime is a violent or dangerous crime under 8 C.F.R. § [1]212.7(d) is not dependent on it having been found to be a crime of violence under 18 U.S.C. § 16 or an aggravated felony under section 101(a)(43)(F) of the Act. . . . Nevertheless, we will use the definition of a crime of violence found in 18 U.S.C. § 16 as guidance in determining whether a crime is a violent crime under 8 C.F.R. § [1]212.7(d), considering also other common meanings of the terms "violent" and "dangerous." The term "dangerous" is not defined specifically by 18 U.S.C. § 16 or any other relevant statutory provision. Thus, in general, we interpret the terms "violent" and "dangerous" in accordance with their plain or common meanings, and consistent with any rulings found in published precedent decisions addressing discretionary denials under the standard described in 8 C.F.R. § [1]212.7(d).

*In re: Applicant*, 2013 WL 8117945, at *3–4 (AAO Nov. 6, 2013).

The BIA and the IJ apparently applied the categorical approach in this case; the BIA noted that Morin's statute of conviction provides that a "person

commits [manslaughter] if he recklessly causes the death of an individual," and concluded that "a crime that necessarily involves recklessly causing the death of an individual . . . [is] a violent or dangerous crime." Morin argues that the BIA and the IJ erred in failing to determine whether his actual offense involved the intent to harm. In support of his position, he notes that "every precedential case finding a 'violent or dangerous crime' has involved intentionally injurious acts." He further argues that DHS, in adjudicating adjustment of status applications, frequently relies on the statutory definition of "crime of violence," which requires an element of intent.

Morin's argument is wholly unavailing. Even if the BIA were required to look to Morin's conduct rather than the elements of his statute of conviction, *but see, e.g., Cisneros*, 834 F.3d at 865, the regulation plainly does not require proof of intent to harm. As the Eighth Circuit observed in *Waldron*, "The regulation says nothing about the standard being applicable to only 'the worst criminal offenders' or only to those who intended to cause substantial injury; the only criteria identified in the regulation is [sic] that the alien's crime be 'violent or dangerous.'" 688 F.3d at 359; *see also Cobos-Gonzalez v. U.S. Atty. Gen.*, 542 F. App'x 772, 775 (11th Cir. 2013) ("The BIA . . . expressly considered [the petitioner's] assertions that he was intoxicated and did not actually intend to kill or injure the victim—and concluded that the crimes were 'violent or dangerous' under 8 C.F.R. § 1212.7(d), or indeed under any reasonable standard.").

Further, the BIA "interpret[s] the terms 'violent' and 'dangerous' in accordance with their plain or common meanings." Black's Law Dictionary defines "dangerous" as "likely to cause serious bodily harm." *Dangerous*, BLACK'S LAW DICTIONARY (10th ed. 2014). Similarly, the Oxford English Dictionary defines "dangerous" as "fraught with danger or risk, causing or occasioning danger; perilous, hazardous, risky, unsafe." *Dangerous*, OXFORD

No. 16-60087

ENGLISH DICTIONARY (Online Version), http://www.oed.com/view/Entry/47187.
Neither of these definitions involves the intent to harm, and both support the
BIA's conclusion that "a crime that necessarily involves recklessly causing the
death of an individual . . . [is] a violent or dangerous crime." *See Reckless*,
BLACK'S LAW DICTIONARY ("Characterized by the creation of a substantial and
unjustifiable risk of harm to others and by a conscious (and sometimes
deliberate) disregard for or indifference to that risk."); *see also Skidmore*, 323
U.S. at 140.

Because 8 C.F.R. § 1212.7(d) does not require the BIA to find that the
applicant's violent or dangerous crime involved the intent to cause harm, we
DENY the petition as to this claim.

C

Finally, Morin argues that the BIA applied 8 C.F.R. § 1212.7(d)
incorrectly by failing to consider whether there could be "extraordinary
circumstances" beyond "exceptional and extremely unusual hardship" and by
failing to consider whether his positive equities constituted such extraordinary
circumstances.    Because this argument relates to the standard that should
have applied, it is a reviewable legal question. *See Samuels v. Chertoff*, 550
F.3d 252, 262 (2d Cir. 2008) (exercising jurisdiction to consider similar
challenge).   Nevertheless, we find that we lack jurisdiction to consider Morin's
argument.    Before the BIA, Morin only argued that he could meet the
heightened standard of "exceptional and extremely unusual hardship." He did
not assert, as he does now, that his "rehabilitation and other factors could
function independently as 'extraordinary circumstances.'" We lack jurisdiction
to hear an issue that was not "first raise[d] before the BIA, either on direct
appeal or in a motion to reopen." *Omari v. Holder*, 562 F.3d 314, 318–19 (5th
Cir. 2009).  We therefore DISMISS the petition as to this claim.

No. 16-60087

IV

Because the BIA and the IJ did not act ultra vires in their application of 8 C.F.R. § 1212.7(d), because § 1212.7(d) does not require proof that the applicant's offense involved the intent to cause harm, and because we lack jurisdiction to consider Morin's argument regarding "extraordinary circumstances," we DENY the petition for review in part and DISMISS in part.